# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN PATTERSON, **individually and on behalf of all others similarly situated**, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| **GREEN GROWTH GROUP, INC.; MARIMED, INC.; MARIMED ADVISORS, INC.; MARI HOLDINGS IL LLC; MARI HOLDINGS MT. VERNON LLC; and MARI HOLDINGS METROPOLIS LLC,** | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Benjamin Patterson ("Plaintiff"), individually and on behalf of others similarly situated, by and through his undersigned counsel, Carroll Shamberg, LLC and Luisi Holz Law, for Plaintiff's Class Action Complaint against Defendants Green Growth Group, Inc., MariMed, Inc., MariMed Advisors, Inc., Mari Holdings IL LLC, Mari Holdings Mt. Vernon LLC, and Mari Holdings Metropolis LLC (collectively "Defendants" or "MariMed"), alleges as follows based upon personal knowledge with respect to himself, and on information and belief derived from, among other things, investigation by counsel and review of public documents as to other matters.

## NATURE OF THE ACTION

1.     Plaintiff brings this action against Defendants for misrepresenting that their potent "cannabis-infused products" ("CIPs") with excessively high tetrahydrocannabinol ("THC") content—were concentrates within the appropriate safety limits—when, in actuality, these

1

CONFIDENTIAL – ATTORNEY WORK PRODUCT

products were well above the applicable safety limits imposed under Illinois law for consumers' health and safety.

2.     Defendants masquerade their CIPs as concentrates and therefore within the safe THC limits for purchase and consumption in Illinois; in actuality, however, the products are CIPs and not safe for consumption because they vastly exceed the applicable THC limits for CIPs, as well as the personal possession limits for those products.

3.     This subjects purchasers to safety risks, adverse effects associated with overconsumption of THC, and potential legal prosecution or the forfeiture or seizure of their assets due to their possession of illegal products.

4.     The CIPs at issue are vapable products like cannabis oil vaporizer cartridges and disposable oil vaporizers (collectively referred to as "Vapable Oils"). Products sold with the intent that they be "vaped." Vapable Oils are consumed in this manner by using a device to vaporize their contents which are then consumed via inhalation *i.e.* "vaping."

5.     Defendants manufacture, market, label, and package their Vapable Oil products as though they were smokeable concentrates in 500-, 1,000-, and 2,000-milligram quantities under their Nature's Heritage and In House brands.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT



6.

7.     On information and belief,  Defendants also manufacture, package, label, advertise, and market Vapable Oils under contract with other third parties under different brand names.

8.     CIPs  are permitted to be sold and are safe to be consumed in potencies of no more than 100 milligrams of THC *per package*. Despite this, Defendants' Vapable Oils universally exceed this safety limit by ten and in the case of some of Defendants' products, a staggering twenty times by marketing and presenting their products as smokeable cannabis concentrate, ambiguously as "Vapes," "Vaporizers," or other products, when, in fact, the Vapable Oils are CIPs.[2]

9.     On information and belief, Defendants undertake substantially similar or identical conduct with third parties to manufacture, market, and sell Vapable Oils under other brand names in amounts that exceed the limits imposed by Illinois for the safety of consumers.

---

[1] *Vaporizers – Thrive Dispensaries*, https://thrivedispensaries.com/categories/vaporizers/ (images taken from advertising for Defendants' branded products used by and relied upon by Defendants' related retail dispensaries as of July 23, 2025).
[2] The term cannabis concentrate is used interchangeably in the cannabis industry and herein with the term "Extract."

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

10.     Defendants do this because cannabis concentrates are not subject to any per package or per dose safety limits and have higher personal possession limits, at a 5-gram personal possession limit for Illinois residents and a 2.5-gram limit for out-of-state consumers.

11.     Accordingly, Defendants are selling their improperly labelled Vapable Oils in single packages in unsafe quantities, while representing that they are safe for use.

12.     The State of Illinois, recognizing the different consumption methods for cannabis products, assigned per product and per serving THC limitations for all manufactured cannabis products which are consumed but not intended to be smoked, i.e., CIPs.

13.     Because the Vapable Oils are not intended to be smoked, and are produced and marketed for the end consumer to vape, they are subject to such limitations.

14.     Defendants know this, and intentionally or recklessly misrepresented that their Vapable Oils were cannabis concentrates and concealed that they were CIPs when, in fact, they are CIPs.

15.     On information and belief, Defendants concealed or misrepresented this information to deceive regulators and consumers in order to allow Defendants to sell Vapable Oils using the 5-gram limit applied to concentrates, instead of the lower 500-mg THC limit imposed on CIPs for Illinois residents, or the even lower limits imposed on out-of-state consumers.

16.     This misrepresentation enabled Defendants to sell up to an extra 5-grams of CIPs in a single transaction under the guise of being concentrates. Ten times the amount of CIP an adult-use consumer is allowed to lawfully possess at one time.

17.     As a result, Defendants Vapable Oils were sold in potencies and concentrations dangerously exceeding the safe limits recognized by the State of Illinois and imposed on CIPs,

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

generating significant profits for Defendants at the expense of Illinois consumers safety and health, and in spite of Illinois public policy promoting the same.

18. Plaintiff and other consumers who purchased Defendants' Vapable Oils were misled to believe that they were purchasing safe cannabis products within the THC potency safety limits recognized by the State of Illinois, and which featured appropriate warnings regarding the status, use, and safety of the product.

19. This unfair and deceptive conduct continues to this day, affecting and harming consumers throughout Illinois.

20. By deceiving regulators and consumers about the type of product and its inherent risks, Defendants were able to take away market share from competing products and increase their own sales and profits, all while subjecting consumers to real and undisclosed risks to their health and safety.

21. As a result, consumers have been and continue to be overcharged, placed at significant risk from overconsuming Defendants' unsafe products, and incurring other consequential damages and harm.

22. Accordingly, Plaintiff brings this action individually and on behalf of similarly situated individuals to seek redress for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") 815 ILCS 505/1 *et seq*., as well as common law torts of fraud and fraudulent concealment, breach of express and implied warranties, and unjust enrichment.

## PARTIES

23. At all relevant times, Plaintiff Benjamin Patterson has been a citizen of the State of Illinois and resident of Madison County.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

24.     Defendant Green Growth Group, Inc. is incorporated in the State of Illinois and is licensed as a Craft Grower under the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq*. and/or Compassionate Use of Medical Cannabis Program Act, 410 ILCS 130/1 *et seq.* Green Growth Group, Inc.'s principal address is in Cook County.

25.     Defendant Mari Holdings IL LLC is an Illinois limited liability company and is an affiliate, parent company, and/or alter ego of MariMed's entity licensed as a Craft Grower under the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq*. and/or Compassionate Use of Medical Cannabis Program Act, 410 ILCS 130/1 *et seq.*

26.     Defendant Mari Holdings Mt. Vernon LLC is an Illinois limited liability company and is an affiliate, parent company, and/or alter ego of MariMed's entity licensed as a Craft Grower under the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq*. and/or Compassionate Use of Medical Cannabis Program Act, 410 ILCS 130/1 *et seq.*

27.     Defendant Mari Holdings Metropolis LLC is an Illinois limited liability company and is an affiliate, parent company, and/or alter ego of MariMed's entity licensed as a Craft Grower under the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq*. and/or Compassionate Use of Medical Cannabis Program Act, 410 ILCS 130/1 *et seq.*

28.     Defendant MariMed, Inc. is a Delaware corporation and is an affiliate, parent company, and/or alter ego of MariMed's entity licensed as a Craft Grower under the Illinois Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq*. and/or Compassionate Use of Medical Cannabis Program Act, 410 ILCS 130/1 *et seq.*

29.     Defendant MariMed Advisors, Inc. is a Delaware corporation and is an affiliate, parent company, and/or alter ego of MariMed's entity licensed as a Craft Grower under the Illinois

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq*. and/or Compassionate Use of Medical Cannabis Program Act, 410 ILCS 130/1 *et seq.*

30.     The aforementioned MariMed entities operate as one entity under the umbrella of the parent company referred to as "MariMed" and publicly traded on Canada's Securities Exchange and the U.S. OTCQX under "MRMD."

31.     Defendants operate a chain of retail cannabis dispensaries in Illinois and other states under the "Thrive Dispensary" brand.[3]

## JURISDICTION

32.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

33.     The amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed class contains more than one hundred (100) members, and the matter is a class action in which one or more members of the proposed Class are citizens of a state different from a Defendant.

34.     The Court has personal jurisdiction over Defendants because they jointly manufacture, process, produce, package, label, market, advertise, and sell their products and conduct other business in the State of Illinois. Defendants have been doing business in Illinois during all relevant times.

35.     Directly, and through their agents, Defendants have substantial contacts with the State of Illinois, have purposefully availed themselves of the Illinois market, and have received substantial benefits and income from their activities in Illinois.

36.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because various Defendant Green Growth Group, Inc., resides in this District. Venue is also proper under

---

[3] *MariMed – Our Stores*, https://www.marimedinc.com/our-stores (last visited July 23, 2025).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

28 U.S.C. § 1391(b)(2) because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including the packaging and labelling of the products at issue.

## COMMON FACTS

### CANNABIS INDUSTRY CORPORATE STRUCTURING

37.     Due to the federal illegality of cannabis and robust regulatory schemes at the state level, the cannabis industry maintains unique organizational designs.

38.     Operationally, the unavailability of licenses, traditional financing, payment processing, and banking services, poses certain challenges.

39.     Of particular note is the unique nature of paying and filing taxes as a cannabis entity, where the federal tax code does not contemplate the sale of cannabis as a legal business. Specifically, IRS Code Section 280E has historically prohibited a federally illegal business from claiming any deductions and credits thereunder.[4]

40.     To account for the complexity of the situation, cannabis companies created complicated, but integrated, corporate structures.

41.     As a general practice, many cannabis companies may maintain separate entities to hire their employees, hold their equipment, contract with vendors, and a host of other functions.

42.     While these entities may be separate on paper or in corporate filings, they are functionally one entity operating under a large umbrella of entities.

43.     Defendants follow suit by selling products under one national portfolio of brands, including In House, Nature's Heritage, Bettie's Eddies, Bubby's Baked, and Vibations.[5]

---

[4] https://www.irs.gov/about-irs/providing-resources-to-help-cannabis-business-owners-successfully-navigate-unique-tax-responsibilities (last visited July 23, 2025).
[5] *MariMed – Our Brands*, https://www.marimedinc.com/our-brands (last visited July 23, 2025).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

44.     These entities share such a unity of interest and ownership that the separate personalities of the corporations and/or individuals no longer exist.

45.     These entities share executive management and C-suite executives, policies and practices, payroll, internal support functions, and other resources.

46.     The aforementioned MariMed entities operate as a single, centralized entity through MariMed's parent companies.

47.     Defendants hold themselves out as one integrated system and operate as such, including by referencing all MariMed products on a single website.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT



48.     Such control and integration is identified and discussed further in Defendants'

public filings, including that of MariMed Inc. in its Form 10-Q for the quarterly period ending

September 30, 2024, wherein they acknowledge they are a

> a multi-state operator in the United States cannabis industry. MariMed
> develops, operates, manages and optimizes state-of-the art, regulatory-
> compliant facilities for the cultivation, production, and dispensing of

---

6 https://marimedinc.com/brands (last visited July 23, 2025).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

medical and adult-use cannabis. MariMed also licenses its proprietary brands of cannabis along with other top brands in domestic markets.[7]

49.    Together, MariMed Inc. and its subsidiaries and controlled and managed entities make up a vertically integrated cannabis operator that focuses on limited-licensed markets in the United States.

50.    As a vertically integrated operator, Defendants own, operate, manage, control, and/or have licensing, consulting or other commercial agreements with cultivation, processing, and retail components across many markets, including Illinois.

### MEDICINAL AND ADULT USE CANNABIS IN THE STATE OF ILLINOIS AND EFFORTS TO CREATE A SAFE AND LEGAL CANNABIS MARKET

51.    In 2013, finding that the adoption of rules to regulate cannabis use is necessary for the public interest, safety, and welfare of its citizens, the State of Illinois became the 20th state to authorize the cultivation, dispensing, and use of cannabis for medicinal purposes, passing the Compassionate Use of Medical Cannabis Program Act (the "Medicinal Act").

52.    In 2018, the Alternative to Opioids Act of 2018 was signed into law to expand access to medical cannabis. The Alternative to Opioids Act of 2018 created the Opioid Alternative Pilot Program (the "OAPP"), which allowed individuals to access medical cannabis as an alternative to prescriptions for opioids as certified by licensed Illinois physicians.

53.    Illinois adopted laws allowing medicinal cannabis use because of the therapeutic and beneficial value it could provide to Illinoisans suffering from debilitating illnesses and to protect "seriously ill patients who have a medical need to use cannabis" from legal prosecution and arrest. 410 ILCS 130/5(d).

---

[7] https://ir.marimedinc.com/sec-filings/all-sec-filings/content/0001522767-24-000091/0001522767-24-000091.pdf
(last visited July 23, 2025).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

54. Illinois passed the Cannabis Regulation and Tax Act (the "CRTA", referred to collectively with the Medicinal Act as the "Illinois Cannabis Acts") in 2019, legalizing the possession and use of recreational cannabis by persons over the age of 21 in the state of Illinois, subject to express safety requirements and limitations, on use and possession limits, as well as required warnings and safety information.

55. Incorporating lessons learned from the period of strictly medical use cannabis, the General Assembly, "[i]n the interest of the health and public safety of the residents of Illinois," found and declared that:

> [C]annabis should be regulated in a manner similar to alcohol so that . . . cannabis sold in this State will be tested, labeled, and subject to additional regulation to ensure that purchasers are informed and protected; and [that] purchasers will be informed of *any known health risks associated with the use of cannabis*, as concluded by evidence-based, peer reviewed research.

410 ILCS 705/1-5(a) (emphasis added).

56. The Illinois Cannabis Acts appointed various State agencies with rule-making power over the sale, use, and harvesting of cannabis products to regulate, among other items, the amount of THC that can be in a particular product and possessed by a person as well as safe dosages, labeling, packaging, and warning requirements.

### DANGERS OF HIGH POTENCY CANNABIS PRODUCTS

57. High THC potency cannabis products pose unique health and safety risks.

58. Many products have rapidly gone from 2-10% THC by weight to 80-90% THC by weight.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

59.     Even in the limited research conducted to date, high-potency cannabis products have been linked to significant risk of adverse physical effects, as well as psychosis and other psychiatric-related illnesses.[8]

60.     Many of these studies acknowledge that there is "concern over an increase in the concentration of THC in the cannabis available in many countries."[9]

61.     Frequent use of high potency products also has a significantly increased chance to lead to dependence.[10]

62.     The State of Illinois recognized the risks to high potency products and imposed limitations to protect the health and safety of the residents of Illinois and other cannabis purchasers, as demonstrated by the State's own warnings:

### Are there added risks for regular cannabis use?

Routine and high-dose cannabis use may have more health consequences than occasional or low-dose cannabis use.   Remember, some cannabis sold at Illinois dispensaries has higher amounts of THC than illegally grown and sold cannabis before legalization.

[11]

63.     After noticing these same impacts, the Dutch government reclassified high potency cannabis products as 'hard drugs,' placing them legally in the same category as cocaine, ecstasy, and heroin.[12]

---

[8]     *See e.g. High potency cannabis and the risk of psychosis*, Di Forti, et. al, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2801827/ (noting that the "most striking finding is that patients with a first episode of psychosis preferentially used high-potency cannabis preparations of the sinsemilla (skunk) variety" which was a potency level of 12-18% THC); *Concerns Rising Over High-Potency Marijuana Use*, https://www.hazeldenbettyford.org/research-studies/addiction-research/high-potency-marijuana ("Individuals who used high-potency cannabis on a daily basis were found to be five times more likely to experience a psychotic disorder than non-users").

[9]*High potency cannabis and the risk of psychosis*, Di Forti, et. al, www.ncbi.nlm.nih.gov/pmc/articles/PMC2801827/

[10] https://pmc.ncbi.nlm.nih.gov/articles/PMC4611354/. *Examining the profile of high-potency cannabis and its association with severity of cannabis dependence*, Freeman, et al., https://pmc.ncbi.nlm.nih.gov/articles/PMC4611354/.

[11] *Illinois Cannabis Regulation Oversight Office,* https://cannabis.illinois.gov/about/faqs.html#faq-item-faq_copy-0-1 (last viewed July 23, 2025).

[12] https://www.bbc.com/news/world-europe-15225270 (last visited July 23, 2025).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

64.     One reason, among many, that high potency products are so concerning is that they significantly increases the chance of addiction.[13]

65.     The risks of such products are also long term, as identified by a recent neurology study which found that regular use of high potency products is leading to a significant increase in dementia diagnosis.[14]

66.     Illinois recognizes the risks and dangers inherent in the consumption of THC, the psychoactive component in cannabis, and issues an annual report, via the Illinois Department of Public Health, on the impact of cannabis legalization on public health.

67.     The 2024 version of that report expressly discusses the rising frequency and inherent risk of Cannabis Hypermesis Syndrome, Cannabis Intoxication, and Cannabis Poisoning (i.e., overdose), including as a contributing cause of death.[15]

68.     The Illinois Department of Public Health clearly acknowledges that "[c]annabis is not a harmless drug[,]" and its use can result in "extreme psychotic reactions" and lead to "substance abuse disorder," otherwise known as addiction.[16] Vapable Oils in particular "can contain significantly more THC, which increases the risk of marijuana poisoning."[17]

---

[13] https://www.cnn.com/2022/07/25/health/marijuana-potency-addiction-study-wellness/index.html (last visited July 23, 2025).

[14] https://www.cnn.com/2025/04/20/health/marijuana-dementia-wellness/index.html. last visited July 23, 2025).

[15] *See* Swartz, J. A., Franceschini, D., & Han, Y. (September 2024). 2024 Illinois Adult Use Cannabis Health Advisory Committee Annual Report, pp. 20–22, 159, *available at* https://cannabis.illinois.gov/content/dam/soi/en/web/cannabis/documents/media/reports-and-public-presentations/2024%20AUHAC.pdf.

[16] *Cannabis*, https://dph.illinois.gov/topics-services/prevention-wellness/cannabis.html (last visited June 16, 2025); *see also Let's Talk Cannabis*, pp. 2,3 *available at* https://www.prevention.org/Resources/0b0362b1-b91d-47fd-bb79-0b38a49a5077/LTC_IL_FrequentlyAskedQuestionsAboutCannabis.pdf (noting that overdosing on cannabis may lead to "poisoning[ and] injuries[,]" and that "[r]outine marijuana users are significantly more likely than nonusers to **develop long-lasting mental disorders**." (emphasis in original)).

[17] *How to use cannabis responsibly*, p. 3 *available at* https://www.prevention.org/resources/e608a7e1-e1a2-468c-b0d5-e65ccd25da5c/ltc_il_howtousecannabisresponsibly.pdf?trackid=ltc_il_howtousecannabisresponsibly.pdf

14

CONFIDENTIAL – ATTORNEY WORK PRODUCT

### LEGAL PRODUCTS AND SAFETY LIMITS UNDER ILLINOIS LAW

69.     In light of the dangers posed by high potency products, the State of Illinois (and most states) imposed safety limitations on the amount of THC that may be in each consumed product which is not intended to be smoked.

70.     The production and manufacture of cannabis products is limited to appropriately licensed entities in the State of Illinois.

71.     Two categories of cannabis products may be manufactured and sold to consumers in the State of Illinois: (1) smokeable products, including smokeable concentrates; and (2) CIPs, such as Vapable Oils, gummies, edibles, topicals, oils, and tinctures, among others, that are made by incorporating cannabis concentrate. *See* 410 ILCS 705/1-10; *see also* 8 ILAC 1000.10.

72.     These categories of products are defined as follows in the CRTA and Department of Agriculture Regulations:

> "**Cannabis concentrate**" means a product derived from cannabis that is produced by extracting cannabinoids, including tetrahydrocannabinol (THC), from the plant through the use of propylene glycol, glycerin, butter, olive oil, or other typical cooking fats; water, ice, or dry ice; or butane, propane, $CO_2$, ethanol, or isopropanol and ***with the intended use of smoking or making a cannabis-infused product.***
>
> "**Cannabis-infused product**" means a beverage, food, oil, ointment, tincture, topical formulation, ***or another product containing cannabis or cannabis concentrate that is not intended to be smoked***.
>
> "**Smoking**" means the inhalation of smoke caused by the ***combustion*** of cannabis.

410 ILCS 705/1-10 (emphases added); *see also* 8 ILAC 1000.10.

73.     Pursuant to the above definitions, cannabis concentrate can only be incorporated into and sold to a retail consumer as a: (1) smokeable product; or (2) cannabis-infused product *i.e.* CIP.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

74.    The CRTA properly defines smoking as requiring combustion. *See* 410 ILCS 705/1-10.

75.    Distinct from smoking is the practice of "vaping," which does not require combustion.

76.    The Illinois Department of Agriculture ("IDOA") acknowledges and reinforces this difference in its Compliance Alert Notice that "vaping would not generally be considered 'smoking'" under the CRTA, "so long as combustion is not required to vaporize the 'cannabis-infused product'." Ill. Dept. Ag. CA-2022-09-INF Infusers and Vape Cartridges.

### CANNABIS LABELING, PACKAGING, AND WARNING REQUIREMENTS

77.    The Illinois General Assembly has declared cannabis should be regulated so that "purchasers will be informed of *any known health risks associated with the use of cannabis*, as concluded by evidence-based, peer reviewed research." 410 ILCS 705/1-5(b)(5-6) (emphasis added); 410 ILCS 130/5.

78.    The product package must define what the product is, whether that be a CIP, smokeable concentrate, or other form of legal product, and labeled with the common name of the product. *See* 410 ILCS 705/55-21(e)(2); 8 ILAC 1300.930(b)(2); 77 ILAC 720.40(b); 410 ILCS 705/55-21(e); 410 ILCS 130/80; 77 ILAC 946.400.

79.    With recommendations from the Department of Public Health, the Illinois Cannabis Acts also mandate warnings for specific product types that "must" be present on labels when offered for sale to an end consumer:

> Cannabis that may be smoked must contain a statement that 'Smoking is hazardous to your health.'

> Cannabis-infused products (other than those intended for topical application) must contain a statement 'CAUTION: This product contains cannabis, and intoxication following use may be delayed 2 or more hours.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

> This product was produced in a facility that cultivates cannabis, and that may also process common food allergens.'

410 ILCS 705/55-21(j).

80.     Cannabis products produced by concentrating or extracting ingredients from a cannabis plant must identify the type of extraction method, solvents or gas used to create the concentrate or extract, and any other chemicals or compounds used to produce or that were added to the concentrate or extract, including when that concentrate or extract is utilized in either a CIP or sold as a smokeable product. 410 ILCS 705/55-21(g).

81.     With respect to CIPs intended for consumption, the maximum limit imposed by the Illinois Cannabis Acts for one package is no more than 100 milligrams. 8 ILAC 1000.420(f); 8 ILAC 1300.920(d); 410 ILCS 705/55-21(k).

82.     Once *any* label has been affixed to the primary packaging of cannabis or a CIP, it may not be altered or destroyed by anyone other than the purchaser. 410 ILCS 705/55-21(l).

83.     Neither cannabis business establishments, nor any other person, may engage in, maintain, place, or use advertising or promotions that contains any statement or illustration that: (1) is false or misleading; or (2) promotes overconsumption of cannabis or cannabis products. 410 ILCS 705/55-20(a), (b)(4); 410 ILCS 705/55-21(f); 8 ILAC 1300.930(c).

84.     Likewise, cannabis product packaging may not include information that "(1) is false or misleading; [or] (2) promotes excessive consumption[.]" 410 ILCS 705/55-21(f); 8 ILAC 1300.930(c); 8 ILAC 1000.420(g).

### Cannabis Quantity Limits

85.     To protect consumers the Illinois Cannabis Acts impose limits on the amount of cannabis that can be possessed by an individual. *See e.g.* 410 ILCS 705/10-10(a)-(b).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

86.     An Illinois resident over the age of 21 purchasing for recreational purposes is permitted to cumulatively possess no more than 500 milligrams of THC contained in CIPs and 5 grams of cannabis concentrate. 410 ILCS 705/10-10(2).

87.     The Illinois Cannabis Acts limits non-residents to cumulatively possessing no more than 250 milligrams of THC contained in a CIP and 2.5 grams of smokeable concentrate. *See* 410 ILCS 705/10-10(a)-(b).

**VAPABLE OILS**

88.     Vapable Oils are one of the most common forms of CIP sold in the State of Illinois. They are ubiquitous, and readily available at most dispensaries.

89.     Vapable Oils are generally sold in different formats, including disposables and cartridges. The following is a representative sample of these types of products:



**Disposables**          **Cartridges**

90.     Vapable Oil disposables come with a pre-charged battery and contain cannabis oil, pre-loaded for immediate use. Vapable Oil disposables typically consist of a pre-charged battery, heating element, filled reservoir containing cannabis oil, and mouthpiece in one device.[18]

---

[18] *See* https://www.leafly.com/news/cannabis-101/types-of-cannabis-vape-carts (last visited July 24, 2025); *see also* https://www.leafly.com/learn/consume/what-is-cannabis-vaping (last visited July 24, 2025) ("Cannabis vaping is a way of consuming cannabis by inhalation, to get high or receive therapeutic benefits from weed. Vaporization of cannabis occurs at a lower temperature than combustion, which occurs when smoking weed. Vaping does not use a flame, but heating methods called convection and conduction, which regulate temperature to ensure cannabis doesn't burn and produce smoke.").

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

91.     Vapable Oil disposables use the built-in battery to heat the oil in the tank until it vaporizes, then it is inhaled by the user. Once the user has finished with the product, they can dispose of the entire device.

92.     Vapable Oil cartridges are pre-filled glass or plastic cartridges that contain cannabis oil. They are generally used with a "vape pen," which is a "battery that works in conjunction with [the] cartridge." When activated, the "battery heats up an atomizer in the cartridge which in turn heats up and activates the various compounds in the cannabis oil."[19]

93.     Ultimately, each Vapable Oil cartridge operates in a functionally similar, if not identical, manner. An atomizer is heated using a battery in order to heat and activate cannabis oil contained therein, which is then inhaled by the user without the use of combustion. Neither disposables nor cartridges are sold with the intent that the oil be removed from the disposable or cartridge, or smoked.

### DEFENDANTS' VAPABLE OILS

94.     Defendants jointly produce and sell Vapable Oils in 500-, 1,000-, and 2,000-milligram sizes under the brands In House and Nature's Heritage.

95.     Defendants are responsible for the marketing, advertising, and packaging and labelling content of each of their products.

96.     Defendants created a specific audit committee of its Board of Directors, with the purpose of ensuring internal controls and legal compliance functions, including with respect to legal compliance and Defendants' Code of Ethics.[20]

---

[19] https://www.leafly.com/news/cannabis-101/types-of-cannabis-vape-carts (last visited July 24, 2025)
[20] *MariMed, Inc., Code of Ethics,*
https://content.equisolve.net/_4eb2551152039b7b7a2f790d275d9b3e/marimedadvisors/db/409/3169/file/Code+Of+Ethics.pdf (last visited July 24, 2025).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

97. Defendants' Code of Ethics requires its Board of Directors, officers, and employees to act "in good faith, responsibly, with due care, competence and diligence, without misrepresenting material facts or allowing one's own judgment to be subordinated" and to "[c]omply with applicable governmental laws, rules, and regulations, as well as the rules and regulations of any self-regulatory organizations of which [Defendants] are a member."[21]

98. Defendants' Code of Ethics claims that, despite that MariMed's

> . . . competition may behave differently will never be an excuse for failing to act according to MariMed's standards. We do not compromise our standards regardless of any internal or external pressures, financial or otherwise. MariMed will never authorize anyone, regardless of position, to commit an illegal or improper act or to direct another employee to commit such an act. Board members, officers and employees may never justify an illegal, unethical or improper act by claiming it was necessary to compete in the local business climate, necessary to meet the financial goals of MariMed or ordered by a superior.[22]

99. Independent of their competitors' conduct, Defendants also claim to

> . . . obey both the letter and spirit of the laws that apply to our business. Most importantly, this means we carry out our business activities with integrity so that if our private business dealings were to become public, we would be proud of the manner in which we have acted.[23]

100. Defendants purportedly expect compliance with their Code of Ethics from their own personnel, vendors, and suppliers, and implicitly and expressly impose a duty upon their personnel to ensure the Code is incorporated into such relationships.

101. In line with their Code of Ethics, and industry practices, Defendants controlled the marketing and advertising of the Vapable Oils. This is demonstrated by MariMed's digital marketing asset portfolio, which consists of marketing representations and statements developed

---

[21] *Id*. at 1.
[22] *Id*.
[23] *Id*.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

and curated by Defendants, and disseminated to Defendants' dispensaries and third-party dispensaries for use in marketing Defendants' products, including the Vapable Oils.[24]

102. Defendants assume the obligations imposed on Craft Growers by the Illinois Cannabis Acts in connection with manufacturing the products identified herein.

103. Each of Defendants' Vapable Oils, at Defendants' direction, are marketed under the product categories of concentrates, disposable vapes, vape pens, vapes, cartridges, or vaporizers at various dispensaries with no mention or clarification that they are, in fact, CIPs.

104. Defendants Vapable Oils use the following language on MariMed's websites and on third-party dispensary websites' product descriptions representing their Vapable Oils manufactured by the Defendants are intended for both vaping and smoking.



25

---

[24] *See Marimed Assets – Brand Folder*, https://brandfolder.com/marimed (last visited July 24, 2025); *see also InHouse Cannabis – Menu Descriptions*, pp.2-3, available at https://brandfolder.com/viewer/marimed/t2r8pjs8563hbnvm39nxg28 ("Our 510 thread carts are all ceramic, made with absolutely no metals, so you can have the most flavorful, safe and smooth smoke every time" . . . "[o]ur All-In-One pens are disposable and rechargeable, made with absolutely no metals, so you can have the most flavorful, safe and smooth smoke every time.").
[25] https://www.inhousecannabis.com/ (last visited July 25, 2025).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT



105. The messaging conveys Defendants representations directly to consumers, and demonstrates Defendants' control over the marketing of their products. Moreover, third-party dispensaries use identical language, provided by Defendants when marketing and advertising the products, demonstrating Defendants' control over the marketing and advertising engaged in by third parties.

---

[26] https://www.naturesheritagecannabis.com/products/vapes/ (last visited July 25, 2025).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT



106. Defendants' Vapable Oils are CIPs because they are "products," which contain "cannabis concentrate that is not intended to be smoked." Ill. Dep. Ag. CA-2022-09-INF Infusers and Vape Cartridges; *see also* https://www.naturesheritagecannabis.com/products/vapes/ (last visited July 25, 2025) ("Your favorite award-winning flower available in oil form - amplified with house-derived cannabis terpenes to deliver a premier vaping experience."); https://curaleaf.com/shop/illinois/curaleaf-il-new-lenox/products/6819eee8a854ebf2e59f5d3c (last visited July 25, 2025) (categorizing a Vapable Oil produced by Defendants as "Vaporizers", and noting that In House "pride[s] ourselves on creating great-tasting vapes with a wide variety – Curate your experience with either our 'strains vapes' infused with cannabis terpenes or our 'flavors vapes' infused with botanical terpenes.").

---

[27] *Curaleaf*, https://curaleaf.com/shop/illinois/curaleaf-il-new-lenox/products/6819eee8a854ebf2e59f5bc6 (last visited July 25, 2025) (featuring marketing for one of Defendants' In House Vapable Oils, featured and available as of July 25, 2025).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

107.    On information and belief, Defendants also manufacture Vapable Oils for other third parties which are substantially similar to the Vapable Oils produced and sold under their own brand names.

108.    Despite Defendants' marketing materials uniformly and expressly stating that their Vapable Oils are intended to be vaporized – <u>not smoked</u> – Defendants market, package, and sell their Vapable Oils in amounts and potencies of THC so dangerous for consumption by vaping that their manufacture, marketing, sale, and possession are prohibited by Illinois public policy, and which render them useless for their marketed and intended purpose.

109.    Making matters more confusing, Defendants misrepresent that the process of vaping their products *is* smoking, advertising "the most flavorful, safe and smooth smoke every time."[28] As well as "the cleanest, smoothest and most flavorful smoke every time."[29] And even " a pristine, pure, and natural smoke every time" their products are used.[30]

110.    All of Defendants' Vapable Oils exceed the recognized 100-milligram per-product safety limits for THC potency imposed upon CIPs, most by significant multiples.

111.    Defendants' Vapable Oils are regularly in excess of 80% THC. In other words, these products (in 1-gram vapes) regularly contain over 800 milligrams of THC, seven times the recognized per-product CIP safety limits.

112.    Defendants market and package their Vapable Oils to masquerade them as cannabis concentrates in a number of ways, including through packaging the Vapable Oils in amounts which are permitted for concentrates but prohibited for CIPs to be sold in, by omitting or concealing their

---

[28] https://curaleaf.com/shop/illinois/curaleaf-il-new-lenox/products/6819eee8a854ebf2e59f5d3c (last visited July 25, 2025).
[29] https://www.inhousecannabis.com/(last visited July 25, 2025).
[30] https://www.naturesheritagecannabis.com/products/item/all-in-one-vape-pen/ (last visited July 25, 2025).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

status as CIPs, and further concealing their status and safety profile by marketing them simply as "vapes," "vaporizers," "disposables," "cartridges," and otherwise, without further description.

113.    Further confusing consumers, Defendants not only market their vaporizers as being "smoked," but package and label their Vapable Oils with the warning required of smokeable products, while omitting the warning required of CIPs, which the Vapable Oils are.



114.    The inclusion of the warning for smokeable products is an affirmative statement, as "[c]annabis that *may* be smoked *must* contain a statement that 'Smoking is hazardous to your health.'" (*emphasis added*) 410 ILCS 705/55-21(j)(1).

115.    As such, Defendants' inclusion of a warning for smoking is an affirmative statement that their Vapable Oils are smokeable and intended to be smoked, despite that they cannot be smoked.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

116.    Their omission of the warning required of CIPs is likewise an affirmative statement that the Vapable Oils are not CIPs, and serves to further confuse consumer as to the nature and safety profiles of their products.

117.    Defendants also fail to provide adequate warnings or safety information to protect consumers from the heightened risks and dangers posed by consuming the Vapable Oils in the manner marketed—vaping—that account for or mitigate the risks and dangers posed by their unsafe THC content.

118.    Instead, Defendants instruct purchasers to "Inhale as needed." This directly contradicts the intent of the required warning for CIPs to inform users that the product could take "2 or more hours" until "intoxication" may occur.

119.    Such instructions have the likely and intended result of encouraging users to consume more of the product immediately if they fail to feel its full effects immediately upon use. This is despite the State's prohibitions on encouraging overconsumption, and the required warnings that such products can take up to 2 hours to take effect, which serve the State's public policy goals to prevent the overconsumption of such products.

120.    All of this serves to deceive and confuse consumers into believing that the Vapable Oils are safe cannabis concentrates instead of unsafe CIPs, and, further, that Defendants' Vapable Oils are generally safe to consume without further information, instruction, or warning, in the actual manner advertised: vaping.

121.    To serve their policy goals of promoting and protecting the "health and public safety of the residents of Illinois,"[31] the Cannabis Acts limit an adult-use purchaser to purchasing

---

[31] 410 ILCS 705/1-5(b).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

and possessing only 500 milligrams of THC in CIPs at a time. However, a single purchaser is allowed to purchase and possess up to 5 grams of cannabis concentrate.

122.    By misrepresenting their Vapable Oils as cannabis concentrate, Defendants are able to increase the sales of their CIPs by a factor of 11.

123.    If Defendants had complied with the Illinois Cannabis Acts, Illinois consumers would be limited to purchasing up to five 100-milligram cartridges at a time (or any combination of compliant CIPs totaling 500 milligrams) and would be prevented from purchasing additional CIPs.

124.    Under Defendants' current illegal scheme, however, consumers can purchase 10 times that amount (5 grams) as cannabis concentrate in unsafe 1-gram, or 2-gram increments, and still purchase an additional 500 milligrams of properly marketed CIPs.

125.    This allows for 5.5 grams of CIPs to be sold in a single transaction, 11 times the maximum possession limit of CIPs imposed by law for the safety of Illinois consumers.

126.    As a result, consumers purchased Defendants' Vapable Oils reasonably believing they were safe to use and consume, and instead unknowingly received products that were not only inherently unsafe, but generally failed to comply with recognized minimum safety standards imposed to protect Illinois consumers.

127.    Defendants' unfair and deceptive practices universally exposed consumers to a risk of overconsuming and the resulting harms. By selling their Vapable Oils with THC content well above the recognized safety limits, Defendants put their customers at risk of adverse physical effects like psychoactive effects, anxiety attacks, overwhelming intoxication, and cannabis poisoning (overdose).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

128.    Of the most important, material features of a cannabis product is the ability for a consumer to safely and reliably purchase, possess, and consume the product. Consumers lack the ability to test or independently ascertain the safety of Defendants' Vapable Oils at the point of sale.

129.    Accordingly, reasonable consumers must and do rely on Defendants to honestly report, inform, and educate them regarding the safety of their Vapable Oils and their contents when designing, manufacturing, distributing, marketing, and selling the Vapable Oils.

130.    Defendants' unlawful conduct is uniform across their Vapable Oils. They have made no attempt to clarify that their Vapable Oils are CIPs, or to provide adequate information or instructions necessary to identify or mitigate the additional and undisclosed dangers posed by their products, despite the duties imposed upon them by the Illinois Cannabis Acts. Moreover, they have made no attempt to ensure that their products are manufactured, marketed, or sold with the intent, instruction, or restriction that they be smoked, as required of cannabis concentrates the CRTA.

131.    Defendants know the safety of their products is material to any purchaser, and as a result emphasize their products' safety, and their commitment to safety, in their marketing.

132.    Defendants knew that their Vapable Oils were, in fact, CIPs; despite that knowledge they continue to deceptively and dangerously market and package the Vapable Oils with THC content limited to cannabis concentrate, and conceal the risks inherent in consuming their products as CIPs, reaping the benefits of their deception.

133.    Vapable Oils, like those manufactured and sold by Defendants, are one of the highest selling cannabis products in the State of Illinois. By increasing their per-transaction limits, Defendants have been able to drastically increase their sales of those products without consideration of the risks they imposed on their consumers.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

134.     Preying on the trust and reliance of consumers, Defendants continue to introduce stronger and stronger products to the market, without appropriate disclosure of the dangerous impact of those products or the fact that they exceed recognized safety limits imposed for the safety of Illinois consumers.

135.     The reality is that Defendants' deceptive conduct is exposing unsuspecting consumers to incredibly potent Vapable Oil products that are beyond the recognized limits imposed for their safety.

136.     These benefits have been substantial to date. As Defendant, and corporate parent, MariMed Inc. reported in their 2024 Q3 Report that it earned over $119 million through the third quarter of that year alone.[32]

137.     The packaging, marketing, and sale of Vapable Oils at issue here is simply one part of Defendants' playbook to maximize their available efficiencies and beat out their competitors.

## ALLEGATIONS SPECIFIC TO BENJAMIN PATTERSON

138.     Plaintiff Benjamin Patterson is an adult use cannabis purchaser.

139.     On or around December 6, 2024, Plaintiff made an adult use purchase of a Jack Straw In House 1,000mg Pen from Cloud9 in Edwardsville, Illinois.

140.     Plaintiff's total for the disposable vape before the application of any taxes or discounts was $57.00.

141.     Defendants' Vapable Oils were, and still are marketed as 1-gram disposable vapes, with THC concentrations exceeding 80%.

142.     Defendants' products were listed on the Cloud 9 Dispensary ordering platform, where Plaintiff observed the packaging and description of the product he purchased.

---

[32] https://ir.marimedinc.com/news-events/press-releases/detail/265/marimed-reports-third-quarter-2024-earnings

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

143.    By example, the photos of Vapable Oils listed herein were pulled directly from Defendants' marketing materials, were also listed on dispensary ordering sites and in person at the dispensary locations on screens and other marketing mediums.

144.    Defendants controlled the content of such packaging and the content and use of any marketing or advertising of their Vapable Oils, including marketing and advertising done by third parties.

145.    Plaintiff personally reviewed the label and packaging of the Vapable Oil featured in such marketing and on the product itself prior to purchase to confirm his order. The label and packaging indicated to Plaintiff that the product complies with lab testing, labeling, and safety requirements, and otherwise is a compliant product.

146.    Plaintiff relied on these images and descriptions insofar as they portrayed themselves as safe to consume, safe to use in the manner marketed—vaping, within relevant THC safety limits, and compliant with the law.

147.    On information and belief, and in accordance with standard business practice, the images on the dispensary ordering platform websites viewed by Plaintiff were created, prepared, drafted, provided and/or approved by Defendants to be utilized by the dispensary. As such, Defendants had control over the representations made or omitted therein.

148.    Plaintiff did not observe any warnings or labels in Defendants' marketing materials or on the packaging and labeling of the packaging indicating that Defendants' Vapable Oils contained THC that exceeds safe limits and standards for CIPs, or *any* instruction regarding the safe use of such potent and dangerous products.

149.    Defendants' Vapable Oils were, and still are, marketed as 1-gram 'vapes.' These products feature upwards of 80% THC each.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

150.     Defendants make even larger products, manufacturing, packaging, labelling, and selling 2-gram 'vapes' in excess of 80% THC.

151.     At the time, Plaintiff was unaware that Defendants had mischaracterized their products and concealed their undisclosed dangers.

152.     Plaintiff was not aware that the Vapable Oils had been improperly and dangerously packaged, labelled and marketed, and were, in fact, unsafe CIPs containing nearly ten times the 100-milligram safety limit recognized by Illinois for a single package of CIPs.

153.     Despite their status as CIPs, the labels and packaging used by Defendants generally included, and continue to include, the warning for smokeable products, meaning concentrates. Defendants do so despite that the Vapable Oils are manufactured and sold with the intent they only be vaped.

154.     Making matters more confusing, the packaging and labels omit the required warnings for CIPs, leaving consumers unaware of the warnings and safety guidance required to be provided to them, and confused as to what the product actually is, a CIP.

155.     Likewise, Defendants labels offer no information, instruction, or directions regarding the *safe* consumption of their product. Instead advising purchasers to "[i]nhale as needed."

156.     Plaintiff relied on Defendants' representations that the sale of their Vapable Oils were safe  based on their status and holding themselves out as licensed cannabis companies under the State's robust regulatory structure, and reasonably assumed compliance with the same in purchasing the Vapable Oils.

157.     Plaintiff relied on Defendants' representations and the information and warning labels on the Vapable Oils in deciding to purchase the Vapable Oils.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

158.    Plaintiff did not know that the Vapable Oils he was purchasing were actually CIPs that were dangerously potent and unsafe, and failed to comply with the State's recognized safety guidelines.

159.    Plaintiff would not have purchased these Vapable Oils had Plaintiff known they were not safe, were misrepresented as a different product, did not have appropriate warnings and information on the packaging and product, and did not have any appropriate safe dosing instructions.

160.    Moreover, Plaintiff would not have been able to purchase a product as dangerous as the Vapable Oils, as the sale of such dangerous products was prohibited by the Illinois Cannabis Acts.

161.    The Vapable Oils are worthless as a legal alternative to illicit cannabis because they do not comply with the cannabis safety standards set out by the State of Illinois, and posed a significant risk to Plaintiff and any other person who consumed them as intended by Defendants.

162.    The Vapable Oils should not have been sold to or possessed or used by consumers.

163.    Plaintiff was misled and harmed as a proximate result of Defendants' conduct.

## CLASS ACTION ALLEGATIONS

164.    Plaintiff brings claims individually and on behalf of the following class pursuant to Fed. R. Civ. Pro. 23:

> All persons who, within the applicable limitations period, purchased within the State of Illinois any Vapable Oils containing more than 100mg of THC that were manufactured, processed, made, labeled, and/or packaged by Defendants.

165.    Excluded from the Class are: (1) Defendants; (2) Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their family; (4) persons who properly and timely request exclusion; (5) persons whose

32
CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defendants' counsel, and their experts and consultants.

166. **Numerosity**. The proposed Class contain members so numerous that separate joinder of each member of the class is impracticable. The total sales of Vapable Oils during the applicable statutory period are in the tens of millions and there are thousands of proposed Class Members. The individuals who purchased Vapable Oils can be ascertained through records in the possession, custody, or control of Defendants.

167. **Commonality and Predominance**. There are questions of fact or law common to the Class, such common questions predominate over any questions affecting only individual members, including but not limited to the following:

- Whether Defendants misled consumers into purchasing Vapable Oils;
- Whether Defendants misrepresented or concealed material facts about the Vapable Oils, including the nature of the products and safety of using them;
- Whether Defendants improperly manufactured, packaged, labeled, and advertised the Vapable Oils;
- Whether the Vapable Oils constitute an unreasonable safety risk;
- Whether Defendants violated the Illinois Consumer Fraud Act when they sold the Vapable Oils to consumers;
- Whether Defendants breached their warranties owed to Plaintiff and the Class; and
- Whether Defendants acted with deliberate indifference to the safety risks posed by the Vapable Oils.

168. **Typicality**. Plaintiff's claims are typical of the Class members' claims insofar as they are identical and Plaintiff has no circumstances antagonistic to the Class.

169. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff understands the obligations inherent in representing the putative class, and the corresponding duties. Plaintiff has retained counsel competent and

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

experienced in complex and class action litigation. Plaintiff has no interests antagonistic to the Class's interests, and Defendants have no defenses unique to Plaintiff.

170. **Superiority**. A class action is the superior mechanism for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of the Illinois Consumer Fraud Act 815 ILCS 505/1 *et seq.*
on behalf of Plaintiff and the Class**

171. Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

172. Plaintiff, Members of the Class, and Defendants are "persons" within the meaning of 815 ILCS 505/1(c) and 510/1(5).

173. At all times mentioned herein, Defendants engaged in "trade" or "commerce" in Illinois as defined by 815 ILCS 505/1(f), by engaging in the offering and sale of things of value in Illinois.

174. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") provides that ". . . [u]nfair or deceptive acts or practices  including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in . . . the 'Uniform Deceptive Trade Practices Act'… in the conduct of any trade or commerce are . . . unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

175.    Plaintiff and Class Members purchased Vapable Oils manufactured and marketed by Defendants.

176.    Defendants misrepresented the nature and safety of the Vapable Oils through statements, omissions, ambiguities, half-truths, and/or actions and engaged in unfair or deceptive acts or practices prohibited by the ICFA by engaging in the following, among other conduct.

177.    Defendants manufactured, packaged, labeled, marketed, and advertised unsafe and dangerous Vapable Oils in amounts of up to 2 grams (2,000 milligrams) with quantities of THC limited to concentrates in order to masquerade them as such. The Vapable Oils contain per package amounts of THC in excess of recognized limits established to protect the safety of Illinois consumers, the production, sale, and marketing of such dangerous products is expressly prohibited by the Illinois Cannabis Acts.

178.    To make matters worse, the 1- and 2-gram Vapable Oils manufactured and sold by Defendants contain more THC in a single CIP than an out-of-state consumer or adult-use Illinois resident are even allowed to purchase or possess.

179.    Defendants accomplished this through a number of misrepresentations, omissions, concealments, and other unfair conduct.

180.    Defendants undertook this conduct with the intent that consumers and others would rely on their deceptive and unfair schemes, so they could unlawfully market, sell, and profit off of various dangerous and unsafe CIPs being sold as, and in amounts limited to, cannabis concentrate.

181.    As alleged, Defendants' marketing, packaging, advertising, and business practices were rife with deception.

182.    Specifically, Defendants systematically misrepresented that the Vapable Oils at issue were cannabis concentrate by ensuring that they were packaged, marketed, and sold in

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

amounts limited to cannabis concentrates in retail dispensaries, and marketing the Vapable Oils in those concentrations on their own websites, and the websites of retailers, with the intent that their CIPs, the Vapable Oils, would be sold with excessive amounts of THC only permitted for cannabis concentrate, resulting in the sale of CIPs to consumers in quantities and concentrations of THC which were unsafe for their intended method of use and consumption.

183. Defendants controlled the marketing of the products at issue, guaranteeing the Vapable Oils were marketed in amounts limited to cannabis concentrate, and marketed or sold under ambiguous and unofficial categories of product, including "vapes," "vaporizers," "disposables," and "cartridges" in their own advertising and educational materials, as well as those which they imposed upon retailers. Defendants' also market their products as being smokeable, and highlight the quality of the smoke their products produce, despite that they are not capable of combustion. Defendants governed the representations made at the retailers of their Vapable Oils.

184. Specifically, Defendants' advertisements and product descriptions are contained on the product packaging as well as on Defendants' and third-party retailer's websites and ordering platforms, including those used in-store by consumers to place in-person orders, with identical images and descriptions as used on Defendants' own website in many instances.

185. Defendants' advertisements and product descriptions are also located in dispensaries on screens both as electronic advertisements and as part of the in-store ordering process, in addition to any hard copy flyers, handouts, and other documents that they distribute to third parties to market the Vapable Oils.

186. Defendants undertook these marketing, advertising, labelling, and packaging practices with regard to their Vapable Oils with the intent that consumers rely on the representations made therein.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

187.     Defendants omitted and actively concealed information from Plaintiff, the Class, and other consumers, that was not only material to each transaction, but that Defendants were duty bound to provide.

188.     Defendants concealed the fact that the products they were selling were unsafe, included incorrect warnings which misrepresented the products use, failed to provide any instruction to mitigate the inherent and undisclosed risks of their unsafe product,  and that the products did not comply with Illinois's safety requirements or law.

189.     Defendants did so by consistently representing their unsafe products were other categories of products that could potentially be deemed safe under certain circumstances, like smokeable cannabis concentrate, or categories that were intentionally ambiguous, like "vapes", in order to conceal their true nature.

190.     In service of this deception, Defendants omitted the safety risks inherent in the consumption of such concentrations of THC in CIP form.

191.     Defendants also omitted or concealed that, if their products were being sold as concentrates under the CRTA, they were only permitted to be sold with the intent they be smoked as required by the CRTA. Instead, Defendants produced, marketed, and sold each of the Vapable Oils with the sole intent that the end-user vape the product. The format in which the Vapable Oils are manufactured and packaged ensures that this the only method in which they can be consumed.

192.     Moreover, all CIPs are required to be labelled and packaged at the point of preparation, where each product shall be labelled with "the common or usual name of the item and the registered name." 410 ILCS 705/55-21(e)(2).

193.     However, here, Defendants failed at any time to properly classify their Vapable Oils, omitting their status as CIPs.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

194.    On information and belief, Defendants misrepresented or concealed these aspects of their products to regulators, as well.

195.    Defendants included inappropriate and incorrect warnings pertaining to smoking, despite the fact that Vapable Oils are vaped and not smoked.

196.    Specifically, Defendants applied the warning "Smoking is hazardous to your health," a required warning for "[c]annabis that may be smoked."[33] In doing so, Defendants affirmatively represented that their product may be smoked, and thus a cannabis concentrate, despite that the Vapable Oils are not intended to be smoked by the end consumer, and cannot be smoked by an end consumer.

197.    In doing, so Defendants concealed the true nature of the product despite their duty to provide the accurate warnings and information for the safety of consumers generally.

198.    To confuse matters more, Defendants omitted the required warning for CIPs, confusing consumers as to what the product was, and the Vapable Oils' safety profiles.

199.    This has a likelihood to, and did, result in confusion among Plaintiff and the Class as to what Defendants' Vapable Oils actually were, and whether they were CIPs, which includes products intended to be vaped, or cannabis concentrate, which is intended to be smoked.

200.    Defendants knowingly and/or recklessly did so in order to avoid the regulations and limitations associated with CIPs, allowing Defendants to sell more product on a per unit and per transaction basis, subject to the higher recreational purchasing limits allowed for cannabis concentrates as opposed to CIPs.

201.    Defendants knew their Vapable Oils were legally defined as CIPs, meaning they were capped at lesser per transaction sales limits than cannabis concentrates.

---

[33] 410 ILCS 705/55-21(j)(1).

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

202.     By selling CIPs as cannabis concentrate, Defendants were able to sell much larger quantities of THC by volume through the increased sales limits – quantities that violated Illinois's public policy to protect the safety of cannabis consumers,  and put consumers at substantial risk.

203.     This conduct, and the conduct generally alleged herein constitutes deceptive practices under the ICFA.

204.     Defendants undertook this scheme of conduct in an intentional, systematic, and knowing manner.

205.     The deceptive conduct pervades Defendants' product descriptions, packaging, marketing, and public statements.

206.     Defendants made the deceptive representations and omissions discussed above with the intent that Plaintiff and other consumers rely upon them in determining that their Vapable Oils were safe and whether to purchase them or a competing product.

207.     Defendants' improper conduct is misleading in a material way in that it induced Plaintiff and the Members of the Class to purchase Defendants' Vapable Oils when they otherwise would not have, placed Plaintiff and Members of the Class at risk of overconsuming cannabis and the related harms, and placed consumers in an unsafe position. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with a reckless disregard for the truth and the safety of consumers.

208.     Plaintiff and other Members of the Class were exposed to, and reasonably relied upon, Defendants' deceptive representations, and omission and concealment of material facts, when they purchased Defendants' Vapable Oils from various dispensaries across the State of Illinois, believing they had purchased safe products, in compliance with the Illinois Cannabis Acts.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

209.     Plaintiff and other members of the Class were harmed in the full amount of the monies paid for the Vapable Oils purchased, as they were unsafely and unlawfully placed into commerce by Defendants, and were willfully, wantonly, and/or with reckless disregard for the truth, marketed by Defendants as being compliant with the Illinois Cannabis Acts (they are not), lawful for an individual to possess in many instances (they are not), and not unnecessarily dangerous (they are), in contravention of the Illinois Cannabis Acts.

210.     Defendants' conduct also amounts to a series of unfair practices.

211.     Defendants' conduct offends the public policy of the State of Illinois, including, at a minimum, basic public policies aimed at protecting consumers and ensuring that cannabis products are offered safely and legally in Illinois.

212.     Defendants' mischaracterization of the Vapable Oils as cannabis concentrate instead of CIPs resulted in the increase of their per unit sales and acquiring significant market share of the cannabis industry in the State of Illinois, all at the expense and risk of consumers.

213.     Defendants marketed their Vapable Oils in amounts limited to, and featuring statements reserved for cannabis concentrate, or confusingly as "vapes," with no further information, in order to sell greater volumes of the product by capitalizing on higher per-transaction and per-product limits on sales i.e. the product possession limits per purchaser.

214.     In doing so, Defendants unlawfully promoted and subjected consumers to the unknowing overconsumption of cannabis, including Plaintiff and Members of the Class, by marketing, promoting, and selling improperly labeled and packaged cannabis products that fail to feature or conform to the safeguards against overconsumption, including safety labels, serving size limits, serving size identification, and legal quantity limits.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

215.     Defendants' pursuit of profit in disregard of consumer safety is not only unethical and unscrupulous, it is immoral and oppressive.

216.     These are dangers sought to be mitigated by the public policy considerations of the Illinois Cannabis Acts through their dosing, labelling, and packaging requirements which expressly require that "[p]ackaging must not contain information that: (1) is false or misleading; [or] (2) promotes excessive consumption[.]" 410 ILCS 705/55-21(f).

217.     As such, Defendants' conduct amounts to a pervasive and systemic series of acts done to evade the safety requirements of the State of Illinois in order to advance Defendants' own interests and increase Defendants' sales and profits.

218.     The requirements imposed upon Defendants by the Illinois Cannabis Acts serve the public policy of the State of Illinois by promoting and preserving the health and safety of its residents in the face of a dangerous industry.

219.     To further these goals, the Illinois Cannabis Acts recognize the lack of consumer and purchaser knowledge regarding cannabis in all its forms, as well as the laws and regulations that govern its purchase and consumption.

220.     The Illinois Cannabis Acts imposed the safety requirements, which were ignored and violated by Defendants, in order to remedy the potential harms caused by this lack of knowledge, and shifts the duty of education and legal compliance to cannabis companies like Defendants – a duty that Defendants failed to uphold here.

221.     As such, Defendants' conduct is wholly unfair to the people of the State of Illinois, as well as those visiting Illinois and consuming cannabis in reliance on the public policies and laws of the State, and in contravention of the public policy goals of the general assembly in passing the Illinois Cannabis Acts.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

222.    There is no benefit to consumers from Defendants' conduct. The only parties who benefit are Defendants, which enjoy reduced compliance costs and increased sales volume and profits as a result of their conduct.

223.    Plaintiff and other Members of the Class would not have purchased Defendants' Vapable Oils but for Defendants' deceptive and unfair conduct described herein. As Plaintiff and other Members of the Class could not and would not have purchased an unlawful and unsafe product, and would have purchased a legally compliant alternative instead.

224.    Plaintiff and other Members of the Class were deprived of the benefit of their bargain by being put at risk by the unsafe products they purchased and consumed. They paid more than the value of the product because it was in fact dangerous and worthless.

225.    For the reasons discussed herein, Defendants violated and continue to violate ICFA by engaging in the deceptive or unfair acts or practices prohibited by 815 ILCS 505/2.

226.    On information and belief, Defendants undertook identical deceptive and unfair conduct with other third parties to produce and sell Vapable Oils for those third parties and under those third parties' brands.

227.    Plaintiff and other Members of the Class are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under the law.

## COUNT II
### Common Law Fraud
### on behalf of Plaintiff and the Class

228.    Plaintiff incorporates allegations in the foregoing Paragraphs as if fully stated herein.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

229. Defendants made continuous representations through their marketing materials and packaging labels that their Vapable Oils were cannabis concentrates that were safe to consume in the manner marketed and required by the products themselves, vaping.

230. These representations were false and material.

231. The Vapable Oils are CIPs that contain dangerous amounts of THC and are unsafe to consume in the manner intended.

232. Defendants know that the Vapable Oils they produce are actually CIPs with dangerously high concentrations of THC and that they were so dangerous as to be prohibited from being sold to consumers like Plaintiff and the Class.

233. Defendants' material misrepresentations operated as an inducement to Plaintiff and the Class to purchase Vapable Oils that, except for such inducement, they would not have purchased. It was Defendants' intent that their inducement would lead to consumers like Plaintiff and the Class purchasing Vapable Oils thinking that they were safe to consume.

234. Plaintiff and the Class trusted and relied upon Defendants' marketing materials and package labels to be truthful, and did not know that these materials were false.

235. Plaintiff and the Class were reasonable in, and had a right to, their reliance on Defendants' omissions and misrepresentations due to the imposition of a strict regulatory regime on Defendants and other cultivators to ensure their knowledge of the laws and safety of the products they produce, market, and sell as a matter of public policy.

236. Defendants' material misrepresentations are intentional. Defendants' intent is that consumers like Plaintiff and the Class rely upon the misrepresentations and purchase Vapable Oils, regardless of the Vapable Oils' unsafe and dangerous nature.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

237.    Defendants' material misrepresentation categorizing, packaging their Vapable Oils as cannabis concentrates was also intentional conduct aimed at selling greater volumes of the product by capitalizing on the State of Illinois's higher per transaction limit on sales of cannabis concentrate compared to CIPs (which their Vapable Oils actually are).

238.    On information and belief, Defendants also undertake substantially similar and identical fraudulent conduct in conjunction with other third parties regarding the Vapable Oils they produce under contract for those parties.

239.    The representations made by Defendants in regards to those products misrepresent their safety and other material qualities in identical or similar ways that Defendants misrepresent that information here with the Vapable Oils.

240.    Plaintiff and the Class suffered harm as a result of Defendants' misrepresentations and omissions.

241.    Plaintiff and the Class would not have purchased Defendants' Vapable Oils had Defendants not misrepresented the qualities and safety of their products, as they would not and could not have purchased an unlawful product, and would have purchased a safe and compliant alternative instead.

242.    As a direct and proximate cause of Defendants' conduct, Plaintiff and the Class are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under applicable law.

## COUNT III
### Fraudulent Concealment
### on behalf of Plaintiff and the Class

243.    Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

244.     Defendants knew that the Vapable Oils they produced did not comply with the safety requirements of the State of Illinois, and were so dangerous as to be prohibited from being sold to Plaintiff and the Class.

245.     Defendants knew that the Vapable Oils were CIPs that contained dangerously high and unsafe concentrations of THC.

246.     Defendants' marketing omitted or concealed the fact that their Vapable Oils were noncompliant and dangerously unsafe. Defendants' marketing further omitted or concealed the fact that their Vapable Oils were CIPs, not cannabis concentrate.

247.     As Defendants were required by the Illinois Cannabis Acts to know the regulations and requirements of the law, they had knowledge that their Vapable Oils were CIPs and were not in compliance with the Illinois Cannabis Acts.

248.     Moreover, Defendants included warnings for cannabis concentrates, despite that such a warning is limited to *only* smokeable products, and being under a general and specific duties to provide accurate warnings and information to protect the safety of consumers.

249.     It was not within reasonably diligent attention, observation, and judgement of Plaintiff and the Putative Class that Defendants' Vapable Oils were not only CIPs, but that they were dangerous and unsafe to consume in the manner represented.

250.     That Defendants were actually concealing or suppressing these material facts was not reasonably known to Plaintiff and Class Members given the complex nature of the cannabis industry.

251.     Defendants concealed and omitted the fact that their Vapable Oils were actually CIPs with the intention that Plaintiff and the Class be misled as to the true condition of the Vapable Oils – that they do not comply with Illinois's cannabis safety requirements or laws.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

252.    Plaintiff and the Class were reasonably misled by Defendants' omissions and concealment of the true and dangerous nature of their Vapable Oils.

253.    On information and belief, Defendants also undertake substantially similar and identical fraudulent conduct in conjunction with other third parties regarding the Vapable Oils they produce under contract for those parties. The representations made by Defendants in regards to those products omit or conceal material information regarding safety, warnings, and the products themselves in identical or similar ways that Defendants conceal or omit that information regarding Defendants' products.

254.    Plaintiff and the Class suffered harm as a result of Defendants' omissions and concealment.

255.    Plaintiff and the Class would not have purchased Defendants' Vapable Oils had Defendants not omitted or concealed their unsafe nature, as they would not and could not have purchased an unlawful product, and would have purchased a legally compliant and safe alternative instead.

256.    As a direct and proximate cause of Defendants' conduct, Plaintiff and the Class are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, and any other penalties or awards that may be appropriate under applicable law.

## COUNT IV
### Breach of Express Warranty
### on behalf of Plaintiff and the Class

257.    Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

258.    Plaintiff and  Members formed a contract with Defendants at the time they purchased Vapable Oils.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

259.    The terms of the contract include the promises and affirmations of fact made directly by Defendants on the Vapable Oil packaging, labeling, warnings, and instructions, and through their marketing and advertising, including that the Vapable Oils would be of the quality and character as represented including but not limited to statements about the safety, dosage, and efficacy of the Vapable Oils for their intended use—vaping.

260.    The foregoing were relied upon by Plaintiff and the Class when determining to Purchase Vapable Oils, and constitute and contain express warranties that became part of the basis of the bargain, and are part of the standardized expectation between Plaintiff and each Members of the Class, and Defendants.

261.    Defendants expressly warranted that their Vapable Oils were safe, effective, and appropriately dosed, and did not contain any undisclosed risks when consumed in their intended and instructed manner: vaping.

262.    Defendants made these representations in their advertising and marketing (including their websites and the websites and ordering platforms of related and third-party dispensaries alike) for the Vapable Oils, and the Vapable Oil packaging, labeling, warnings, and instructions.

263.    In particular, Defendants represent that the Vapable Oils are intended to be vaped, and "[i]nhaled as needed]," and are safe to vape with no additional consideration.

264.    These representations are made across their packaging, marketing, websites, and third-party retailer marketing content. Indeed, Defendants manufactured the Vapable Oils so that they could *only* be consumed by vaping.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

265.    Defendants' Vapable Oils did not conform to their express representations and warranties because the products contained undisclosed risks including that they were not safe to use in the manner intended and warranted: vaping.

266.    Defendants, as licensed cannabis craft growers, had actual knowledge that their Vapable Oils were not only unsafe, but they failed to conform to the express representations and warranties Defendants had made regarding their Vapable Oils.

267.    On information and belief, Defendants also make substantially similar and identical representations in conjunction with other third parties regarding the Vapable Oils they produce under contract for those parties. Those Vapable Oils fail to satisfy the warranties made by Defendants in the same way Defendants' Vapable Oils fail to satisfy the warranties made by Defendants.

268.    Plaintiff and Members of the Class relied upon these warranties, representations, and affirmations of fact when purchasing the Vapable Oils.

269.    At all times relevant times, Illinois had codified and adopted the provisions of the Uniform Commercial Code governing the warranty of merchantability and fitness for ordinary purpose.

270.    At the time Defendants manufactured, marketed, and sold their Vapable Oils, they recognized and determined the purpose for which the products would be used—vaping—warranted the products were safe, effective, and appropriately dosed for that intended purpose and did not contain any undisclosed risks. These affirmative representations became part of the basis of the bargain in every purchase.

271.    Defendants breached their express warranties with respect to their Vapable Oils as they failed to conform to the affirmations and promises made by Defendants.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

272.     Specifically, the Vapable Oils were not safe to consume in the manner warranted by Defendants in their advertising, marketing, and instructions: vaping.

273.     Defendants promised effective and appropriately dosed products that were safe for vaping, but the Vapable Oils were not as promised because their actual safety profile was not the same as what was represented and bargained for.

274.     Plaintiff and each other Class Members would not and could not have purchased the Vapable Oils had they known these products carried undisclosed risks and were unlawfully dangerous.

275.     To the extent applicable, direct privity is not required between Defendants and Plaintiff or Class Members because among other things, Defendants are manufacturers and made direct statements about the safety and intended use of their products in their marketing, labeling, warnings, instructions, and packaging, and intended their statements and affirmations to flow to Plaintiff and each of the other Class Member.

276.     Plaintiff and other Member of the Class were intended third-party beneficiaries to the extent Defendants made any warranty or representation to an affiliate, partner, or third-party dispensary who in turn resold Vapable Oils to consumers.

277.     Plaintiff and the Class are likewise intended third-party beneficiaries to the extent any warranties or representations were made to between the Defendants, or between Defendants and other third parties who contracted with Defendants, when contracting to produce the Vapable Oils.

278.     Defendants maintained a strict list of authorized partner, affiliate, and third-party dispensaries that they contract with. Defendants sold the Vapable Oils directly through their dispensaries as well as through authorized third-party dispensaries operating under strict direction

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

from Defendants as to the marketing and advertising of their products, with Defendants maintaining ultimate supervision and control of such marketing and advertising, and responsibility for the content thereof.

279.    Defendants know that Illinois recognizes certain safety limits regarding the THC content of cannabis products, and promotes that public policy by imposing certain requirements regarding the safety, packaging, and marketing of cannabis products in the State which form the minimum rights and requirements of consumers in the State. Each product is delivered to specifically meet, at a minimum, those requirements.

280.    Defendants know that the Vapable Oils are intended to be consumed by vaping. The manufacture, sale, and safety of Vapable Oils, like other cannabis products, are governed by their intended use, which Defendants determine and impose at the time of manufacture. Defendants go as far as to limit the functionality of the Vapable Oils so that they may only be consumed by vaping. Additionally, Defendants inform and instruct each end consumer to consume the Vapable Oils by vaping them in their labelling and packaging.

281.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff and each other Member of the Class has been injured and suffered damages in the amount of the purchase price of the Vapable Oils.

282.    The Vapable Oils purchased failed to conform to the express affirmations and promises made by Defendants directly in their marketing, packaging and labelling, and were so inherently dangerous, flawed, unfit, or unmerchantable for their intended purpose as to have no market value.

283.    Defendants have actual knowledge that their Vapable Oils exceed the safety limits for THC potency recognized by the State of Illinois, as well as the dangers of overconsuming THC

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

in high potency cannabis products like their Vapable Oils. As such, Defendants knew of the defects present in each of the Vapable Oils when they were sold to Plaintiff and Members of the Class.

284.    On information and belief, Defendants engage in substantially similar or identical conduct with third parties to manufacture, package, label, market, and sell third-party Vapable Oils under contract.

285.     Similarly, those products were expressly warranted to be safe and vapable, and each fails to conform with those express warranties in the same way that Defendants' Vapable Oils fail here.

286.    Although Plaintiff does not seek to recover for physical injuries, Defendants' Vapable Oils carried significant undisclosed risks to Plaintiff and other Member of the Class.

287.    Because Defendants had actual knowledge of their Vapable Oils defects, in that they were unsafe, and failed to conform to the express representations and warranties made regarding the Vapable Oils, pre-suit notice of Plaintiff's claims is not required.

## COUNT V
### Breach of Implied Warranty
### on behalf of Plaintiff and the Class

288.    Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

289.    Plaintiff and each other Member of the Class formed a contract with Defendants at the time they purchased Vapable Oils.

290.    The terms of the contract include the promises and affirmations of fact made by Defendants on the Vapable Oils packaging, labeling, and instructions, and through their marketing and advertising, including that the Vapable Oils would be of the quality and character as

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

represented including but not limited to statements about the safety, efficacy, and dosages of the Vapable Oils for their intended use—vaping.

291.    The foregoing were relied upon by Plaintiff and the Class when determining to purchase the Vapable Oils, and constitute implied warranties that became part of the basis of the bargain, and are part of the standardized expectation between Plaintiff and Members of the Class, and the Defendants.

292.    Defendants sold Vapable Oils that they impliedly warranted were safe and effective, and appropriately dosed, and did not contain any undisclosed risks when consumed in their intended and instructed manner: vaping.

293.    Defendants made these representations in their advertising and marketing (including their websites and the websites and ordering platforms of their affiliate and third-party dispensaries alike) for the Vapable Oils, and the Vapable Oil packaging, labeling, warnings, and instructions.

294.    In particular, Defendants represent that the Vapable Oils are intended to be vaped, and are safe to vape with no additional consideration. This representation is made across their packaging, marketing, websites, and affiliate and third-party retailer marketing content. Indeed, Defendants manufactured the Vapable Oils so that they could only be consumed by vaping.

295.    Defendants' Vapable Oils did not conform to their promises and affirmations because the Vapable Oils were not of merchantable quality at the time of sale, featured significant undisclosed risks, and were not safe to use in the manner intended or instructed: vaping. Defendants, as licensed cannabis manufacturers and processors, had actual knowledge that their Vapable Oils were not only unsafe, but they failed to conform to the affirmations and promises Defendants had made regarding their Vapable Oils.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

296. On information and belief, Defendants also make substantially similar and identical representations in conjunction with other third parties regarding the Vapable Oils they produce under contract for those parties. Those products fail to satisfy the warranties made by Defendants in the same way Defendants' Vapable Oils fail to satisfy the warranties made by Defendants.

297. Plaintiff and Members of the Class relied upon these warranties, representations, and affirmations of fact when purchasing the Vapable Oils.

298. At all times relevant times, Illinois and all other states had codified and adopted the provisions of the Uniform Commercial Code governing the warranties of merchantability and fitness for ordinary and particular purposes.

299. At the time Defendants manufactured, marketed, and sold their Vapable Oils, they recognized and determined the purpose for which the products would be used—vaping—impliedly warranted the products were safe, effective and appropriately dosed for that intended purpose and did not contain any undisclosed risks. These affirmative representations became part of the basis of the bargain in every purchase.

300. Defendants breached their implied warranties with respect to their Vapable Oils as they were not of merchantable quality, and were not fit for their ordinary or particular purpose at the time of sale.

301. Defendants promised effective and appropriately dosed products that were safe for vaping, but the Vapable Oils were not as promised because their actual safety profile was not the same as that represented and bargained for.

302. Plaintiff and each other Member of the Class would not and could not have purchased the Vapable Oils had they known these products carried undisclosed risks and were unlawfully dangerous.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

303.    To the extent applicable, direct privity is not required between Defendants and Plaintiff or each other Member of the Class because among other things, Defendants are manufacturers and made direct statements about the safety and intended use of their products in their marketing, labelling, warnings, instructions, and packaging, and intended their statements and affirmations to flow to Plaintiff and each other Member of the Class.

304.    Plaintiff and other Member of the Class were intended third-party beneficiaries to the extent Defendants made any warranty or representation to an affiliate, partner, or third-party dispensary who in turn resold Vapable Oils to consumers.

305.    Plaintiff and the Class are likewise intended third-party beneficiaries to the extent any warranties or representations were made to between the Defendants, or between Defendants and other third parties who contracted with Defendants, when contracting to produce the Vapable Oils.

306.    Defendants maintained a strict list of authorized partner, affiliate, and third-party dispensaries that they contract with. Defendants directly sold the Vapable Oils themselves through their own dispensaries or through authorized dispensaries operating under strict direction from Defendants as to the marketing and advertising of their products, with Defendants maintaining ultimate supervision and control of such marketing and advertising, and responsibility for the content thereof.

307.    Defendants know that Illinois recognizes certain safety limits regarding the THC content of cannabis products, and promotes that public policy by imposing certain requirements regarding the safety, packaging, and marketing of cannabis products in the State which form the minimum rights and requirements of consumers in the State. Each product is delivered to specifically meet, at a minimum, those requirements.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

308.    Defendants know that the Vapable Oils are intended to be consumed by vaping. The manufacture, sale, and safety of Vapable Oils, like other cannabis products, are governed by their intended use, which Defendants determine and impose at the time of manufacture. Defendants go as far as to limit the functionality of the Vapable Oils so that they may only be consumed by vaping. Additionally, Defendants inform and instruct each end consumer to consume the Vapable Oils by vaping them in their labelling, packaging, and marketing.

309.    As a direct and proximate result of Defendants' breach of warranty, Plaintiff and each other Member of the Class have been injured and suffered damages in the amount of the purchase price of the Vapable Oils, in that the Vapable Oils they purchased were so inherently flawed, unfit, dangerous, and unmerchantable as to have no market value.

310.    Defendants have actual knowledge that their Vapable Oils exceed the safety limits for THC potency recognized by the State of Illinois, as well as the dangers of overconsuming THC in high potency cannabis products like their Vapable Oils. Moreover, the Defendants are only permitted to produce CIPs, are prohibited from producing CIPs in such concentrations and quantities of THC, and are aware of such prohibitions and the risks of consuming such dangerous high potency THC cannabis products.  As such, Defendants knew of the defects present in each of the Vapable Oils when they were sold to Plaintiff and Members of the Class.

311.    On information and belief, Defendants engage in substantially similar and identical conduct with third parties to manufacture, package, label, market, and sell other of their Vapable Oils under contract. Those products breach their associated implied warranties in the same manner, by not being merchantable at the time of sale because of their inherent risks and dangers when consumed in the method intended and instructed: vaping.

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

312.     Although Plaintiff does not seek to recover for physical injuries, Defendants' Vapable Oils carried significant undisclosed risks to Plaintiff and each other Class Member.

313.     Because Defendants had actual knowledge of their Vapable Oils defects, in that they were unsafe, and failed to conform to the implied warranties made regarding the Vapable Oils, pre-suit notice of Plaintiff's claims is not required.

**COUNT VI**
**Unjust Enrichment**
**on behalf of Plaintiff and the Class**
***(Pled in the alternative to Counts IV and V)***

314.     Plaintiff incorporates the foregoing allegations in the foregoing paragraphs as if fully stated herein.

315.     To the extent that the Court finds that the transactions to sell Vapable Oils as alleged herein constitute a contract, such contract is *void ab initio* as a contract for the sale of unlawful goods.

316.     By manufacturing, advertising, marketing, selling, and profiting off of the sale of unlawful products to Plaintiff and Class Members, Defendants were unjustly enriched by their unlawful conduct.

317.     Defendants' unjust enrichment occurred to the detriment of Plaintiff and Class Members.

318.     The benefit retained by Defendants through their conduct is far greater than the retained revenues derived from the monies paid by Plaintiff and Class Members

319.     Defendants were not only enriched by the funds which they derived from the sale of Vapable Oils purchased by Plaintiff and Class Members, but Defendants also benefit by reducing what would ordinarily be necessary compliance expenses to ensure their Vapable Oils

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

are safe and compliant, or properly labelled and packaged, further enriching them to the detriment of consumers, including Plaintiff and the Class.

320.    Defendants have thus been unjustly enriched by at least the amount that Plaintiff and each Class Member spent on their Vapable Oils and any associated interest. It would be unjust to allow Defendants to retain this enrichment.

321.    Defendants' retention of these monetary benefits violates fundamental principles of justice, equity, and good conscience because Defendants knowingly sold Vapable Oils to consumers that were dangerous to consume and in contravention of public policy supporting the safety, health, and welfare of Illinois consumers.

322.    Plaintiff and Class Members are entitled to restitution in the amount by which Defendants have been unjustly enriched to Plaintiff and Class Members' detriment, and an order requiring Defendants to disgorge any additional profits or other benefit they have retained as a result of their unjust and unlawful conduct.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Benjamin Patterson, on behalf of Plaintiff and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief as pled in the foregoing and judgment against Defendants as follows:

a. An Order certifying the Class, defining the Class as requested herein, appointing Plaintiff as representative for the Class, and appointing his counsel as counsel for the Class;

b. An award of any actual, compensatory, and enhanced damages permitted to Plaintiff and other Members of the Class, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

CONFIDENTIAL – ATTORNEY WORK PRODUCT

CONFIDENTIAL – ATTORNEY WORK PRODUCT

    c.    An award of punitive damages for Defendants' misconduct and deliberate indifference;

    d.    An award of reasonable attorneys' fees, costs, and other litigation expenses;

    e.    An award of pre- and post-judgment interest as available under law;

    f.    The disgorgement of any funds in the amount Defendants were unjustly enriched by their conduct; and

    g.    Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: July 28, 2025                    Respectfully submitted,

**BENJAMIN PATTERSON**, on behalf of himself and others similarly situated

By: */s/ Kyle Shamberg*
Kyle Shamberg
**CARROLL SHAMBERG, LLC**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
kyle@csclassactions.com
(872) 215-6205

Laura Luisi (Atty. No. 6321034)
Jamie Holz (Atty. No. 6319247)
**LUISI HOLZ LAW**
Firm ID: 101603
77 W Wacker Dr., Suite 4500
Chicago, Illinois 60601
Tel: (312) 639-4478
LuisiL@luisiholzlaw.com
HolzJ@luisiholzlaw.com
*Attorneys for Plaintiff and the Putative Class*

CONFIDENTIAL – ATTORNEY WORK PRODUCT