**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BENJAMIN PATTERSON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 25-cv-8766 |
| v. | ) ) | Judge April M. Perry |
| GREEN GROWTH GROUP, INC.; MARIMED, INC.; MARIMED ADVISORS, INC.; MARI HOLDINGS IL LLC; MARI HOLDINGS MT. VERNON LLC; and MARI HOLDINGS METROPOLIS, LLC, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Benjamin Patterson ("Plaintiff") brings this putative class action lawsuit against Green

Growth Group, Inc., MariMed, Inc., MariMed Advisors, Inc., Mari Holdings IL LLC, Mari

Holdings Mt. Vernon LLC, and Mari Holdings Metropolis LLC (collectively, "Defendants").

Doc. 1. Plaintiff alleges in the complaint that Defendants misrepresented their cannabis oil

vaporizer products as "cannabis concentrates" rather than "cannabis-infused products" ("CIPs"),

in an effort to circumvent state laws. *Id*. ¶¶ 1-2, 4-5. As such, the complaint asserts claims for

violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") (Count

I), common law fraud (Count II), fraudulent concealment (Count III), breach of express and

implied warranties (Counts IV and V), and unjust enrichment (Count VI). *Id*. ¶¶ 171-322.

Defendants now move for dismissal under Federal Rule of Civil Procedure 12(b)(1), arguing a

lack of standing, and Rule 12(b)(6) for failure to state a claim. Doc. 22. For the reasons set forth

below, the motion to dismiss is granted.

**BACKGROUND**

Defendants are corporate entities organized under the parent company "MariMed," which produced and sold cannabis products under various brands, including In House, Nature's Heritage, Bettie's Eddies, Bubby's Baked, and Vibrations. Doc.1 ¶¶ 30, 43, 94. Defendants' products included cannabis oil vaporizer cartridges and disposable oil vaporizers ("Vapable Oils") sold in 500-, 1,000-, and 2,000- milligram quantities. *Id*. ¶¶ 4-5.

The Illinois Cannabis Regulation and Tax Act ("CRTA") creates two categories for cannabis products: cannabis concentrates and CIPs. *Id*. ¶ 72. Cannabis concentrates are products derived from cannabis through the extraction of cannabinoids, namely tetrahydrocannabinol ("THC"), and are intended to be smoked or used to make a CIP. *Id*. CIPs, on the other hand, include beverages, foods, oils, ointments, tinctures, topical formulations, or other products containing cannabis or cannabis concentrate that are *not* intended to be smoked. *Id*. Under the CRTA, smoking is defined as "the inhalation of smoke caused by the combustion of cannabis." *Id*. The CRTA provides no definition for the term "combustion."

As alleged in the complaint, Defendants improperly marketed and sold their Vapable Oils as cannabis concentrates when they were actually CIPs. *Id*. ¶ 2. Specifically, Vapable Oils like those sold by Defendants use a battery instead of a flame to heat and vaporize the oil. *Id*. ¶¶ 91-93. Therefore, Plaintiff alleges that although Defendants' Vapable Oils were intended to be inhaled, they were not intended to be smoked as that term is defined in the CRTA. *Id*. ¶ 93. As a result, Plaintiff alleges Defendants' Vapable Oils should have been classified as CIPs. *See id*. ¶ 108.

The distinction between cannabis concentrates and CIPs makes a difference under state law: Illinois residents can purchase and possess up to 5 grams (*i.e.*, 5,000 milligrams) of

2

cannabis concentrate, but only 500 milligrams of THC in a CIP. *Id*. ¶ 86. Non-residents are allowed to possess one-half of those quantities. *Id*. ¶ 87. The required product warnings also differ. Cannabis products that may be smoked must include a statement that "Smoking is hazardous to your health." *Id*. ¶ 79. CIPs (other than those intended for topical application) are instead required to include a warning that reads "CAUTION: This product contains cannabis, and intoxication following use may be delayed 2 or more hours. This product was produced in a facility that cultivates cannabis, and that may also process common food allergens." *Id*.

On or around December 6, 2024, Plaintiff purchased an In House 1,000-milligram Vapable Oil pen from a third-party dispensary. *Id*. ¶ 139. Before making this purchase, Plaintiff reviewed the packaging, label, and description for the product on the third-party dispensary's ordering platform and on the product itself. *Id*. ¶¶ 142-45. Consistent with Defendants' typical labeling practices, *see id*. ¶ 153, the product directed users to "inhale as needed," and included the following warning:

> "This product contains cannabis and is intended for use by adults 21 and over. Its use can impair cognition and may be habit forming. This product should not be used by pregnant or breastfeeding women. It is unlawful to sell or provide this item to any individual, and it may not be transported outside of the State of Illinois. It is illegal to operate a motor vehicle while under the influence of cannabis. Possession or use of this product may carry significant legal penalties in some jurisdictions and under federal law. Smoking is hazardous to your health. Passed laboratory's microbiological, mycotoxins, pesticide and solvent residue analyses."

*Id*. ¶ 113. According to the complaint, Defendants' marketing materials described their In House brand Vapable Oils as "ideal vape[s]" and "great-tasting vapes […] infused with cannabis terpenes." *Id*. ¶ 104 n.25. The description also stated that Defendants' "vape hardware is made

with absolutely no metals, so you can have the cleanest, smoothest and most flavorful smoke every time." *Id.*

Plaintiff now seeks damages for exposure to purportedly unsafe amounts of THC in excess of the quantity limits for CIPs, *id.* ¶ 231, and economic loss because the Vapable Oils are "dangerous and worthless." *Id.* ¶¶ 209, 224.

## ANALYSIS

### I.      Motion to Dismiss for Lack of Standing

The Court begins with Defendants' argument that Plaintiff lacks standing, which "is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pe*re, LLC, 843 F.3d 724, 726 (7th Cir. 2016). When a defendant brings a 12(b)(1) motion arguing a lack of standing, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015). To establish standing, a plaintiff must plausibly allege (1) a concrete and particularized injury in fact; (2) that is traceable to the defendant's conduct; and (3) that can be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Standing is jurisdictional, and without standing the case must be dismissed. *See United States v. Hays*, 515 U.S. 737, 742 (1995).

Plaintiff's claims involve all Vapable Oils sold under Defendants' In House and Nature's Heritage brands.[1] However, the complaint only alleges that Plaintiff purchased a single In House

---

[1] Defendants' Motion to Dismiss suggests that Plaintiff's claims include 500-, 1,000-, and 2,000-milligram size Vapable Oils under a variety of additional brands, including Bettie's Eddies, Bubby's Baked, and Vibrations. Doc. 22 at 13. However, the complaint only includes allegations related to In House and Nature's Heritage Vapable Oils, *see, e.g.*, Doc. 1 ¶¶ 5, 94. Therefore, the Court interprets

1,000-milligram Vapable Oil. *Id*. ¶ 139. Based upon this, Defendants argue that Plaintiff lacks Article III standing to pursue claims related to In House and Nature's Heritage products that he did not purchase.

There is no controlling authority on the issue of whether a plaintiff in a putative class action has standing to bring claims based upon products that plaintiff did not purchase, and judges in this district take differing approaches. *See Gibson v. Albertsons Companies, Inc.*, 754 F. Supp. 3d 793, 803 (N.D. Ill. 2024); *see also Gratz v. Bollinger*, 539 U.S. 244, 263 n.15 (2003) (observing tension in caselaw as to whether similar questions are "appropriately addressed under the rubric of standing or adequacy."). Some judges have found that class action plaintiffs never have standing to bring claims related to products they have not purchased. *See, e.g.*, *Bakopoulos v. Mars Petcare US, Inc.*, No. 20-CV-6841, 2021 WL 2915215, at *3 (N.D. Ill. 2021) (collecting cases). Other judges allow plaintiffs to move forward when the products and alleged misrepresentations about the products are substantially similar. *See, e.g., Wagner v. Gen. Nutrition Corp.*, No. 16-CV-10961, 2017 WL 3070772, at *6 (N.D. Ill. 2017); *see also* McLaughlin on Class Actions § 4.28 (13th ed. 2016) ("[T]he substantial similarity determination is a context-specific analysis, but frequently entails reference to whether the challenged products are of the same kind, whether they are composed of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling."). Finally, other judges still treat the debate over unpurchased products as a question of typicality and adequacy of

---

Plaintiff's claims as only relating to 500-, 1,000-, and 2,000- milligram Vapable Oils from the In House and Nature's Heritage brands.

representation to be handled at the class certification phase. *See, e.g.*, *Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 408-09 (N.D. Ill. 2021).

As an initial matter, the Court addresses the question of standing now rather than waiting until a request for class certification is made. Standing is a threshold inquiry: the Court can either hear the case, or it cannot. Particularly as a motion for class certification has not been made, and may never be made, the Court thinks it best not to delay addressing the issue of standing. That said, the Court need not choose between the other two approaches because Plaintiff's claims regarding non-purchased Vapable Oils fail under even the most lenient standard since the non-purchased products and alleged misrepresentations are not substantially similar.

The Court begins with products made by Nature's Heritage and In House that were not 1,000 milligrams (the quantity purchased by Plaintiff). Plaintiff has made quantity a key part of his case, both based upon allegations that he purchased an illegal quantity of Vapable Oil because a CIP can only contain 500 milligrams of THC, and also allegations that higher quantities are more dangerous. *See, e.g.*, Doc. 1 ¶ 3 (noting that purchasers were at risk of "potential legal prosecution … due to their possession of illegal products"); ¶¶ 57-65 (noting dangers of "high potency" cannabis products). That means, however, that products that were only 500 milligrams are not substantially similar to the product purchased by Plaintiff, because they are of a legal amount to possess and are presumably not as dangerous to consume. The reverse is also true: 2,000-milligram Vapable Oils would presumably be significantly more dangerous. The Court therefore concludes that Plaintiff does not have standing to bring claims based upon 500-milligram or 2,000-milligram Vapable Oils of any brand.

Nor does the Court find that the Nature's Heritage 500-milligram product is substantially similar to that purchased by Plaintiff. Although the Nature's Heritage Vapable Oils work in the

6

same manner and include the same warning statements as the Vapable Oil purchased by Plaintiff, there are distinct differences in packaging and marketing. For example, the Nature's Heritage product is explicitly branded as a "concentrate" on the front of its package and uses milliliters rather than grams or milligrams to indicate size, *id*. ¶ 104 n.26, both of which are relevant to Plaintiff's claims that the packaging is misleading. For these reasons, the Court agrees with Defendants that Plaintiff does not have standing to pursue claims relating to products he did not purchase – specifically, In House Vapable Oils that were sold in 500- and 2,000-milligram quantities and all Nature's Heritage Vapable Oils. Plaintiff may proceed with his claims based only on the product he purchased, the In House 1,000-milligram Vapable Oil.

The Court next addresses Defendants' argument that Plaintiff does not have standing because he has not suffered an injury in fact. The Court disagrees. To establish standing, a plaintiff need not plausibly allege that the actual market value of the product was less than the amount paid. For Article III purposes, it is enough that a plaintiff alleges that he would not have purchased a dangerous product were it not for labeling that led him to believe it was safe.[2] *See In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011) (holding that paying more for a product than one would have knowing its risks is sufficient to confer standing). And that is

---

[2] To be clear: the Court has significant concerns about Plaintiff's allegations of dangerousness to the extent they appear to rely on the fact that Defendants' Vapable Oils exceed the possession and dosage limits in the CRTA for a CIP. The CRTA does not explicitly equate its possessory limits with safety limits, and it is not a reasonable inference that the two concepts should be conflated. For example, the CRTA has different possessory limits for in-state and out-of-state residents. Presumably, that is not because out-of-state residents can only safely consume one-half of the quantities of cannabis than can Illinois residents. Other portions of the CRTA also make it clear that its possession limits are not safety limits, including that a cannabis-infused lotion has the same possessory limit as does a cannabis-infused food, and that cannabis concentrates are not subject to any per-package or per-dose limit and may be possessed in quantities ten times as large as CIPs. The Court accepts the allegations in Plaintiff's complaint as true for the purposes of this motion, but Plaintiff's counsel should carefully consider their Rule 11 obligation to ensure their factual contentions have evidentiary support should they choose to re-plead this complaint. Moreover, the Court will reconsider standing, as it must, at every stage of proceedings should the case proceed to fact discovery.

exactly what Plaintiff has pled in this case. *See* Doc. 1 ¶ 223 ("Plaintiff…would not have purchased Defendants' Vapable Oils but for Defendants' deceptive and unfair conduct…"). The Court is not persuaded by Defendants' reliance on *In re Recalled Abbott Infant Formula* for the proposition that Plaintiff cannot establish standing without a physical injury. *See* 97 F.4th 525 (7th Cir. 2024). In *Abbott*, plaintiffs claimed there was a "potential risk" that the products they purchased were contaminated but did not sufficiently plead facts suggesting that any specific product (including those they purchased) may have been contaminated. *Id*. at 529. To that end, the Seventh Circuit found that plaintiffs' purported injury was not particularized. *Id*. While this Court agrees that Plaintiff has not alleged any physical injuries as a result of the Vapable Oils, he has claimed that all of Defendants' Vapable Oils, including the one he purchased, are "dangerous" and therefore "worthless" to him. *See* Doc. 1 ¶ 224; *see also Abbott*, 97 F.4th at 529-30 (distinguishing the case from *Aqua Dots*, where a "universal defect" was an economic harm that conferred standing). Setting aside the issue of whether Plaintiff has suffered actual damages, which is a merits-based inquiry, spending money on a product that you believed to be safe but later learn is unsafe is a cognizable injury for the purposes of standing. *See Aqua Dots*, 654 F.3d at 750-51; *see also Arreola v. Godinez*, 546 F.3d 788, 794-95 (7th Cir. 2008) ("Although the two concepts unfortunately are blurred at times, standing and entitlement to relief are not the same thing."). Plaintiff here has alleged an injury specific to the Vapable Oil he purchased, regardless of whether he experienced any physical harm as a result of the product. As such, Plaintiff has plausibly alleged an injury in fact sufficient to confer standing.

## II. Motion to Dismiss for Failure to State a Claim

The Court moves next to Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. A 12(b)(6) motion is a challenge to the sufficiency

of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such a motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016).

Most federal pleading is governed by Federal Rule of Civil Procedure 8(a), which requires a plaintiff to plead "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (internal quotations omitted). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a pleading to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the rule "ordinarily requires describing the who, what, when, where and how of the fraud." *Camasta v. Jos. A. Bank Clothiers Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). "One of the purposes of the particularity and specificity required under Rule 9(b) is to force the plaintiff to do more than the usual investigation before filing his complaint." *Id.* (internal quotations omitted).

### A. ICFA (Count I)

Count I alleges a claim under the ICFA. The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). "The elements of an ICFA claim are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Rao v. J.P. Morgan Chase Bank, N.A.*, 153 F.4th 541, 555-56 (7th Cir. 2025) (internal quotations omitted). Because Plaintiff is a private party, he must also show that he suffered actual damages as a result of Defendants' alleged ICFA violation. *Camasta*, 761 F.3d at 739.

Defendants argue that Plaintiff has failed to state a claim under the ICFA, among other reasons, because (1) Plaintiff's allegations are not plausible and, at most, amount to a mistake or misrepresentation of law rather than fact; and (2) Plaintiff fails to plausibly allege actual damages. The Court agrees on both fronts.

In this case, Plaintiff argues that Defendants acted deceptively and unfairly by misrepresenting their Vapable Oils as cannabis concentrates. Essentially, Plaintiff alleges that Defendants misrepresented or concealed: (1) the product's status as a CIP; (2) that the product was not within the permissible quantity range for a CIP; and (3) the overall safety of the product. In support of these allegations, Plaintiff pleads that he relied on the language used on the product label and description that he viewed on the third-party ordering platform prior to purchase. Specifically, Plaintiff argues that Defendants' substitution of the CIP-specific warning for the smoking-specific warning on the product's label and use of the terms "smoke" and "vape" in the

product description would lead a reasonable consumer to misunderstand the status, safety, and legality of the Vapable Oils.

The most glaring problem with the ICFA claim is that it is not pled with specificity. General allegations about "misrepresentations, omissions, concealments, and other unfair conduct," *id*. ¶ 179, on "websites and ordering platforms of related and third-party dispensaries alike," *id*. ¶ 262, do not meet Rule 9(b)'s heightened pleading standard. For example, Plaintiff allegedly relied upon the statements made on the Cloud 9 Dispensary ordering platform when purchasing Defendants' product. *Id*. ¶ 142. However, the 58-page complaint does not include a single allegation regarding what specific statements were made on Cloud 9's website, who made the statements, or when Plaintiff read the statements. Because the complaint never alleges the "who, what, when, where and how of the fraud" with respect to this plaintiff, it could be dismissed on that basis alone.

In addition to a lack of specificity, Plaintiff's generalized allegations of fraud are also implausible. For example, Plaintiff alleges that use of the word "vape" on the Vapable Oil label is ambiguous and therefore misleading to consumers. *Id*. ¶ 183. But Plaintiff agrees that Defendants were required to use the "common name" of the product, *id*. ¶ 78, which is in fact, "vape." Similarly, the Court is unpersuaded by Plaintiff's argument that consumers would be misled by Defendants' use of the phrase "smoking" on the product label. "Vaping" and "smoking" are used interchangeably in common parlance. In short, no reasonable consumer would have seen Defendants' product and drawn any conclusion other than that they were purchasing a vape pen that was intended to be inhaled. And a reasonable consumer certainly

11

would not see the word "smoke" and draw the conclusion that Defendants must be purporting to consumers that their product was a cannabis concentrate as defined by the CRTA.

Also problematic are Plaintiff's repeated assertions that Defendants misled him into purchasing an illegal product. Cannabis is not legal under federal law. To the contrary, it is a Schedule I controlled substance, within the same category as heroin. *See* 21 CFR § 1308.11. Nor did Defendants conceal this fact: Plaintiff was explicitly warned on the product label that he supposedly read that "[p]ossession or use of this product may carry significant legal penalties in some jurisdictions and under federal law." Doc. 1 ¶ 113. The Court therefore finds patently implausible Plaintiff's claims that he was somehow duped into engaging in potentially illegal conduct. *See, e.g.*, *id.* ¶¶ 3, 161, 211, 214, 223, 255. Defendants' product label was quite clear that there was a potential legal risk.

Plaintiff's entire theory of liability in this case is that Defendants marketed their Vapable Oils as cannabis concentrates, when technically they should have been categorized as CIPs. But how to properly categorize Defendants' Vapable Oils under the CRTA is a question of law, and mistakes of law cannot form the basis for an ICFA claim. *See McIntosh v. Walgreens Boots All., Inc.*, 135 N.E.3d 73, 84 (Ill. 2019) (holding that "misrepresentations or mistakes of law cannot form the basis of a claim for fraud"). To elucidate the problem: Plaintiff's belief that Defendants' Vapable Oil is a CIP depends upon the definition of "smoking" in the CRTA, which as already noted requires "combustion." But determining what constitutes combustion requires its own exercise in statutory interpretation, as it is not a term defined in the CRTA. Defendants have submitted evidence that Merriam-Webster defines combustion in a way that would include their Vapable Oils. *See* Doc. 22 at 18-19. Plaintiff, for his part, submits other definitions that he believes should prevail. *See* Doc. 25 at 19-20. Product distributors are not expected to have read

Justice Scalia's *Reading Law: the Interpretation of Legal Texts*, and this is presumably why Illinois courts do not punish retailers who make mistakes in statutory interpretation. *See, e.g.*, *McIntosh*, 135 N.E.3d at 84 ("An erroneous conclusion of the legal effect of known facts constitutes a mistake of law and not of fact.") In short, this Court agrees with the reasoning set forth in *Rodriguez v. Cresco Labs, Inc. et al.*, No. 25-CV-633, 2025 WL 3215872, at *5 (N.D. Ill. 2025), and *McKenzie et al. v. Progressive Treatment Solutions, LLC*, No. 25-CV-1768, 2026 WL 636741, at *7 (N.D. Ill. 2026), cases with nearly identical facts, that even if Defendants miscategorized the legal status of their Vapable Oils, there would be no plausible ICFA claim on this basis.

In summary: Plaintiff has not plausibly alleged that Defendants did anything deceptive or unfair because he was given all of the relevant facts about Defendants' Vapable Oil. Plaintiff was told he was buying 1,000 milligrams of Vapable Oil containing cannabis, and that is what he got. Plaintiff was warned that "smoking is hazardous to your health," "may be habit forming," and that Defendants' product could "impair cognition." Plaintiff was also warned that possession of the Vapable Oil "may carry significant legal penalties."[3] Based upon all of this, the complaint

---

[3] There is suggestion in the complaint that Plaintiff was harmed by the lack of CIP-specific warning labels. But all the CIP label would have required was a notice that CIPs can have delayed intoxication effects and that there is the possibility of cross-contamination with common food allergens. Plaintiff has not alleged any facts that these two warnings are at all relevant in the context of a Vapable Oil, and it is not a reasonable inference that they are. Vapable Oils meant to be inhaled are significantly different from cannabis products meant to be eaten, both with respect to speed of intoxication and the likelihood of food allergy reactions.

does not plausibly allege any misrepresentation or unfairness as is required to state an ICFA claim.[4]

Lastly, even if Defendants' conduct was deceptive or unfair, Plaintiff's complaint also fails to plausibly allege actual damages. Although the Court has found enough of an injury to confer Article III standing, this is a different inquiry from what Illinois law recognizes as plausible damages. *Cf. Rifkin v. Bear Stearns & Co., Inc.*, 248 F.3d 628, 631 (7th Cir. 2001) (holding that Article III standing is governed by federal, not state, law). To establish a claim under the ICFA, a plaintiff must plausibly allege that he suffered actual "pecuniary loss" due to a deceptive or unfair act. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019). Examples of actual pecuniary loss include allegations that the plaintiff paid more than the merchandise was worth, or that a better price was available elsewhere in the market. *Kim v. Carter's, Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Here, Plaintiff alleges that absent Defendants' misrepresentations he would not have purchased the product, and that he would have instead "purchased a legally compliant alternative." Doc. 1 ¶¶ 223-24. First, as already mentioned, there are no legal alternatives (at least under federal law). Given that Plaintiff already accepted the risk of purchasing something illegal under federal law, it cannot be said that he was damaged by purchasing something that was also potentially illegal under state law. Plaintiff does not include any allegations to suggest that the Vapable Oil did not work as intended, caused him any ill-effects, or that it was more expensive than any other Vapable Oil available on the market.

---

[4] Plaintiff's unfairness claim under the ICFA is premised on the same conduct that Plaintiff categorizes as deceptive. *See, e.g.*, Doc. 1 ¶¶ 19, 127, 176. As such, the unfairness claim fails for the same reasons as the deceptiveness claim. *See Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 464 (7th Cir. 2014) (noting that "what is deceptive is also unfair" and that the two types of ICFA claims rise and fall together when "the charge of unfairness [is] a charge of deception by another name.") For this same reason, the Court is not compelled by Plaintiff's argument that Defendants waived any challenge to the unfairness allegations by arguing in their motion to dismiss only that the claims of misrepresentations and omissions were not plausibly alleged.

Moreover, Plaintiff's claim that the product was "worthless" is far too speculative and conclusory to plausibly support a finding of actual damages. *See Camasta*, 761 F.3d at 740 (finding plaintiff's allegations as to the true value of the product "mere guesses void of any substantial analysis" and therefore insufficient to support a claim). Nor is Plaintiff's assertion that "[b]y increasing their per-transaction limits, Defendants have been able to drastically increase their sales," Doc 1 ¶ 133, a plausible allegation that Plaintiff was damaged. For these reasons, Plaintiff's ICFA claim also must be dismissed due to the lack of actual damages.

### B. Common Law Fraud (Count II) and Fraudulent Concealment (Count III)

The Court moves next to Plaintiff's claims for common law fraud and fraudulent concealment. In Illinois, the elements of common law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996). Fraudulent concealment requires that: "(1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages." *Neely v. Senne*, 231162-U, 2025 WL 871644, at *2-3 (Ill. App. Ct. 2025). Just as with the ICFA, "the

damages necessary to support a cause of action for fraud must be pecuniary in nature." *Lewis v. Lead Indus. Ass'n*, 178 N.E.3d 1046, 1056 (Ill. 2020).

As discussed above, Plaintiff has failed to plausibly allege with specificity that Defendants falsely stated or concealed a material fact (as opposed to a conclusion of law) likely to mislead a reasonable consumer, as well as actual damages. Therefore, Plaintiff's claims for common law fraud and fraudulent concealment are dismissed.

### C. Breach of Express Warranty (Count IV) and Implied Warranty (Count V)

Plaintiff also brings claims for breach of express and implied warranties. Defendants assert several arguments challenging Plaintiff's warranty claims, including that Plaintiff: (1) fails to allege a direct relationship with Defendants; (2) did not provide pre-suit notice; and (3) does not allege specific warranty language in the complaint to serve as the basis for a breach of warranty. The Court need not consider Defendants' breach-specific claims because actual damages are also an essential element of a breach of warranty claim. *See Kim v. Mercedes-Benz, U.S.A., Inc.*, 818 N.E.2d 713, 726 (Ill. App. Ct. 2004). "While it is not necessary that damages for breach of warranty be calculated with mathematical precision, basic contract theory requires that damages be proved with reasonable certainty. Damages based on conjecture or speculation are precluded." *Shoop v. DaimlerChrysler Corp.*, 864 N.E.2d 785, 788 (Ill. App. Ct. 2007) (internal citation omitted). Plaintiff's breach of warranty claims are dismissed for the same reasons explained above.

### D. Unjust Enrichment (Count VI)

Finally, the Court considers Plaintiff's unjust enrichment claim. Plaintiff is correct that he is generally permitted to plead unjust enrichment in the alternative so long as such claim does not include allegations related to an express contract. However, under Illinois law, unjust enrichment

16

is not a standalone cause of action. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019); *Martis v. Grinnell Mut. Reins. Co.*, 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) ("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery."). Without any plausible underlying cause of action, Plaintiff's unjust enrichment claim must also be dismissed.

## CONCLUSION

This case represents Plaintiff's counsel's fourth bite at the apple in the Northern District of Illinois, pleading essentially the same case against different defendants in the cannabis industry. *See Rodriguez v. Cresco Labs, Inc. et al.*, No. 25-CV-633 (N.D. Ill.); *McKenzie et al. v. Progressive Treatment Solutions*, LLC, No. 25-CV-1768, (N.D. Ill.); *Davis et al. v. Suntrust Farms, LLC et al.*, No. 25-CV-1372 (N.D. Ill.). And four judges have now dismissed the complaint as implausibly pled. A plaintiff is generally entitled to re-plead a complaint at least once before a dismissal is with prejudice, and therefore this dismissal is without prejudice. That said, Plaintiff's counsel is cautioned that they should heed the strong and universal concerns about the plausibility of their legal theories that have been expressed by this bench. For the reasons stated above, Defendants' motion to dismiss is granted. Any amended complaint must be filed by April 13, 2026.

Dated: March 16, 2026

_____
APRIL M. PERRY
United States District Judge